Gah. IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XPERTUNIVERSE, INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 09-157-RGA |
| CISCO SYSTEMS, INC., | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Philip A. Rovner, Esq., Jonathan A. Choa, Esq., Wilmington, DE; Joseph Diamante, Esq., Charles E. Cantine, Esq., New York, NY; Attorneys for Plaintiff

Jack B. Blumenfeld, Esq., Jennifer Ying, Esq., Wilmington, DE; John V. Gorman, Esq., Philadelphia, PA; Franklin Brockway Gowdy, Esq., Brett M. Schuman, Esq., San Francisco, CA; Attorneys for Defendant

June 19, 2012

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff XpertUniverse, Inc. ("XU") brings this action against Defendant Cisco Systems, Inc. ("Cisco") alleging that Cisco infringed its patents and misappropriated certain confidential and trade secret information from XU during the course of a relationship between the parties, as set forth most recently in XU's Fourth Amended Complaint. (D.I. 82). Cisco responded with numerous counterclaims and affirmative defenses, alleging that XU has kept and used Cisco's confidential information, worked with Cisco's competition, and obtained its patents via fraud on the United States Patent and Trademark Office. (D.I. 127).

Before the Court is XU's Motion to Dismiss Certain Counterclaims and Affirmative Defenses in Defendant's Answer to Plaintiff's Fourth Amended Complaint (D.I. 145, 146), Cisco's opposition (D.I. 157), and XU's Reply (D.I. 164). For the reasons that follow, XU's motion is granted as to Cisco's counterclaims III, IV, V, VII, and VIII (to the extent it is based on inequitable conduct before the PTO); and affirmative defenses 3-11. The remainder of XU's motion is denied.

### I. Legal Standards

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). When reviewing a motion to dismiss for failure to state a claim, the court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210–11. The court must then determine whether the facts alleged in the complaint are sufficient to make a "plausible claim for relief." *Id.* at 211.

Federal Rule of Civil Procedure 12(f) states, in relevant part, that "[a] court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are disfavored. *Fesnak & Assoc's, LLP v. U.S. Bank Nat. Ass'n*, 722 F.Supp.2d 496, 502 (D.Del. 2010). "Even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Id.*

## II. Decision

### A. Cisco's allegations of inequitable conduct are insufficient.

Cisco claims inequitable conduct by XU in its Third, Fourth, and Fifth Counterclaims and pleads it in its third through eleventh affirmative defenses, alleging that XU did not disclose offers to sell or prior art, and that XU intentionally omitted an inventor. XU argues these counterclaims and affirmative defenses fail to allege intent to deceive the PTO and but-for materiality.

"An individual associated with the filing and prosecution of a patent application commits inequitable conduct when he or she (1) makes an affirmative misrepresentation of a material fact, fails to disclose material information, or submits false material information to the PTO; (2) with the specific intent to deceive the PTO." *Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, *5 (D.Del. Feb. 3, 2012) (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed.Cir.2008)). "Although inequitable conduct is conceptually broader than fraud, any such allegations must be pled in accordance with Rule 9(b), which requires that 'the circumstances constituting fraud or mistake shall be stated with particularity.'" *Wyeth Holdings*, 2012 WL 600715, at *5 (citing *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v.*

*Mega Sys., LLC*, 350 F.3d 1327, 1342, 1344 (Fed.Cir.2003) (quoting FED.R.CIV.P. 9(b))). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO." *Wyeth Holdings*, 2012 WL 600715, at *5 (citing *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed.Cir.2009)).

In order to adequately plead inequitable conduct, the claimant must "recite[] facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO."[1] *Delano Farms Co. v. Ca. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011); *Wyeth Holdings*, 2012 WL 600715, at *8. In *Delano Farms*, the plaintiff specifically alleged that one inventor had detailed knowledge of invalidating conduct and knew its materiality, allowing the inference that he decided not to disclose that information with deceptive intent. 655 F.3d at 1350.

Cisco specifically describes the alleged invalidating prior sales and prior art, when and how XU as an entity became aware of them and their alleged relevance to the patents in suit, and that XU as an entity did not disclose it to the patent office. (D.I. 127, ¶¶ 27-38). For counterclaim III and affirmative defenses 3-5, Cisco alleges:

> On information and belief, Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent was an officer or employee of XU during prosecution of the '709 Patent and the '903 Patent.

---

[1] XU's reliance on *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) in arguing for a heightened pleading standard for intent is rejected. *See Wyeth Holdings*, 2012 WL 600715, at *6-7.

> On information and belief, XU personnel including at least Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent knew or should have known of the . . . product during the application process for the '709 Patent and the '903 Patent.
>
> On information and belief, XU personnel including at least Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent intentionally failed to disclose the sale or offer for sale of its . . . product to the U.S.P.T.O. as required by 37 C.F.R. § 1.56(a) [R-2] in any Information Disclosure Statement U.S.P.T.O. form 1449 and did so with intent to deceive.

*Id.* pp. 57-59, ¶¶ 58-60, 65-66, 72-73; pp. 26-31, ¶¶ 10-13, 21-24, 32-35. The affirmative defenses additionally allege:

> On or about January 30, 2004, XU personnel including at least Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent admitted that the . . . product embodied every element of one or more claims of the '709 Patent and the '903 Patent. On or about January 30, 2004, these same XU personnel were told that the . . . product was prior art relevant to the patentability of the inventions claimed in the '709 Patent and the '903 Patent.

*Id.* pp. 27-31, ¶¶ 12, 23, 34. Counterclaim IV alleges:

> On information and belief, Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent was an officer or employee of XU during prosecution of the '709 Patent and the '903 Patent, respectively, and knew or should have known of the [alleged prior art].
>
> On information and belief, XU personnel including at least Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent knew or should have known that the [alleged prior art] was material to the patentability of the '709 Patent and the '903 Patent.
>
> On information and belief, XU personnel including at least Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent intentionally failed to disclose the [alleged prior art] to the U.S.P.T.O. as required by 37 C.F.R. § 1.56(a) [R-2] in any Information Disclosure Statement U.S.P.T.O. form 1449 and did so with intent to deceive.

*Id.* pp. 60-62, ¶¶ 78-80; 83-85; 88-90. Affirmative defenses 6-8 have nearly identical allegations:

> On information and belief, Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent was an officer or employee of XU during prosecution of the '709 Patent and the '903 Patent, respectively, and knew or should have known of the [alleged prior art].
>
> On information and belief, Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent who was an officer or employee of XU during prosecution of the '709 Patent and the '903 Patent, respectively, knew or should have known that the [alleged prior art] was material to the patentability of the '709 Patent and the '903 Patent.
>
> On information and belief, XU personnel including at least Abraham Zelkin or one or more of the other individuals listed as an inventor on the '709 Patent and the '903 Patent intentionally failed to disclose the [alleged prior art] to the U.S.P.T.O. as required by 37 C.F.R. § 1.56(a) [R-2] in any Information Disclosure Statement U.S.P.T.O. form 1449 and did so with intent to deceive.

*Id.* pp. 32-36, ¶¶ 41-43, 49-51, 57-59.

Cisco's allegations that Zelkin was an XU "officer or employee" and that he "knew or should have known" of the prior sales and prior art fall short of concretely alleging that he actually knew of the invalidating information. These scant allegations are further diluted by the qualifiers that either Zelkin, or "one or more" of the other inventors, knew about the prior sales and art and their materiality - affording the possibility that Zelkin, the only specific individual named, did not know about them at all. Cisco also failed to allege that any specific individual withheld the information with the intent to deceive the PTO. Dropping Zelkin's name in the scrum of "XU personnel including at least Abraham Zelkin or one or more of the other individuals listed as an inventor" fails to meet the pleading standard for "who" deceived the PTO. *See Delano Farms*, 655 F.3d at 1350; *Wyeth Holdings*, 2012 WL 600715, *5.

The allegations are also insufficient to meet the "when" standard. Assuming that the "form 1449" reference is sufficient to describe the "where," and that the prior art description is sufficient to describe the "what," and that together (with the allegation that Zelkin signed the

6

form, or some similar allegation) they are sufficient to describe the "how," as I believe they would be, *Wyeth Holdings* requires the date of submission of the form 1449 to describe the "when." Cisco's allegations that hint at Zelkin as the individual perpetrator of inequitable conduct therefore fail to state a claim for inequitable conduct. XU's Motion is granted with respect to counterclaim III, counterclaim IV to the extent it relies on the Zelkin allegations (paragraphs 76-91), and affirmative defenses 3-8.

Counterclaim IV also alleges that "XU personnel including at least Victor Friedman or James B. Nevin knew or should have known" about a third patent application, and that that application was material to the prosecution of the patents in suit. (D.I. 127, p. 63, ¶¶ 95-96). Cisco's ninth affirmative defense alleges that Friedman and Nevin were aware of the application, and "knew or should have known" that it was material to the patentability of the patents in suit. *Id.* p. 37, ¶¶ 66-67. Counterclaim IV and the ninth affirmative defense further allege that Friedman and Nevin were both inventors on the application; that Friedman was XU's Chairman and/or CEO and Nevin was an inventor on the patents in suit; and that "XU personnel including at least Victor Friedman and James B. Nevin intentionally failed to disclose" the application, and did so with intent to deceive. *Id.* p. 63, ¶¶ 92-97; pp. 36-37, ¶¶ 63-68.

Cisco's allegations that "XU personnel including at least Victor Friedman or James B. Nevin knew or should have known" about the third patent application and its alleged materiality would be insufficient to plead specific intent. The insufficiency of these allegations is somewhat, but not completely, ameliorated by the additional allegations that Friedman and Nevin were inventors on the third patent application, while Friedman was XU's Chairman and/or CEO and Nevin is an inventor on the patents in suit. The counterclaim does not, however, allege sufficient

facts to show that Friedman – who was not an inventor on the patents in suit – had any role in obtaining the patents in suit, and thus the counterclaim as to him, on that basis alone, is insufficient. The court can reasonably infer that Nevin knew of the invalidating information – his own prior patent application – that was withheld from the PTO. If he withheld that information, it would be reasonable to infer that he did so with the specific intent to deceive the PTO. *See Delano Farms*, 655 F.3d at 1350. The counterclaim does not state the "when" of the failure to disclose. Thus, XU's Motion is granted with respect to paragraphs 92-97 of counterclaim IV, and Cisco's ninth affirmative defense.

In counterclaim V and affirmative defense 11, Cisco pled that XU as a general entity listed David Rutberg on the original Application Data Sheet filed with the '967 Patent application, and on its European counterpart, but later removed Rutberg as an inventor; and did not include Rutberg as an inventor on the application that ultimately issued as the '903 Patent. (D.I. 127, pp. 64-65, ¶¶ 100-108; pp. 38-39, ¶¶ 76-84). Cisco does not allege that any specific XU employee or inventor took these actions, so this Court cannot reasonably infer that any specific individual was responsible. *See Delano Farms*, 655 F.3d at 1350. XU's motion is granted with respect to counterclaim V and affirmative defense 11.

XU argues that Cisco's allegations in counterclaims III and IV and affirmative defenses 3-9 do not sufficiently plead but-for materiality because they do not allege an actual sale or commercial offer for sale, nor the extent to which the allegedly withheld references were publicly accessible. The Court need not address this argument at all, in view of the preceding rulings, but will review this argument in relation to Cisco's counterclaim IV allegations and affirmative defense 9, addressing Friedman and Nevin's prior patent application. Cisco alleges facts

8

sufficient to allow for the reasonable inference that but for the alleged omission, the Examiner would not have issued the patent.[2] *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011); *Wyeth Holdings*, 2012 WL 600715, at *6. Cisco specifically identified the alleged patent application and its date of publication, and alleged that it constitutes a printed publication sufficient to trigger the printed publication bar. This Court can reasonably infer that but for the alleged omission of this published patent application, the Examiner would not have issued the patents in suit.

XU also argues Cisco's tenth affirmative defense fails to allege but-for materiality. Cisco alleges that XU should have disclosed to the USPTO prior art a third party, ipCapital, identified to XU as being relevant to the patentability of XU's inventions. Cisco added this affirmative defense for the first time in its answer to XU's Fourth Amended Complaint. *(Compare* D.I. 58). Cisco alleges that XU hired ipCapital to identify patentable inventions; that ipCapital provided XU reports identifying potentially patentable inventions and prior art; that XU did not disclose any prior art to the USPTO during prosecution of the patents; and that "XU's intentional failure to disclose the prior art identified to XU by ipCapital allowed XU to fraudulently obtain issuance of the '709 Patent and the '903 Patent." (D.I. 127, p. 38, ¶¶ 70-75).

Cisco does not explicitly allege but-for materiality, nor are its allegations sufficient to allow the reasonable inference of but-for materiality. *See Wyeth Holdings*, 2012 WL 600715, at *6. Cisco alleges only that ipCapital identified prior art that was "relevant" to potentially patentable

---

[2]XU provides no legal support for its asserted heightened pleading standard for publications; XU's reliance on *In re Lister*, an appeal from a Board of Patent Appeals and Interferences, is misplaced, as that case has no bearing on civil pleadings. *See* 583 F.3d 1307 (Fed. Cir. 2009).

inventions; there is no allegation that those inventions are claimed by the patents in suit, or that the prior art ipCapital identified would have prevented a patent examiner from issuing the patents but for the alleged omission. Cisco points to its allegations of but-for materiality later in its Answer, in the introduction to its counterclaims addressing XU's alleged prior sales. (*See* D.I. 127 p. 52, ¶ 38). This allegation does not pertain to the nondisclosure of prior art alleged in the tenth affirmative defense and is not incorporated therein, and does not salvage that defense. The Court cannot reasonably draw the inference that the patents would not have issued but for the alleged omission of the generally "relevant" references ipCapital identified. XU's motion is granted as to Cisco's tenth affirmative defense.

### B. XU's motion to strike Cisco's other affirmative defenses is denied.

XU asks the Court to strike Cisco's affirmative defenses numbered 1 (no infringement), 12 (prosecution history estoppel), 13 (35 U.S.C. § 287), 14 (no willful infringement), 15 (laches/estoppel), 17 (fault of the plaintiff), 18 (adequate remedy at law), 19 (privilege/justification), 20 (lack of standing), 21 (unjust enrichment), 22 (waiver), 23 (unclean hands), 24 (excuse), 25 (full performance of obligations), 26 (discharge), 27 (consent), 28 (failure to mitigate), 29 (no actual or likelihood of confusion), and 36 (First Amendment), arguing they are nothing more than boilerplate, bare bones conclusory allegations that are inherently prejudicial.[3]

---

[3] XU also argues that the affirmative defenses must meet the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), citing *Dilmore v. Alion Sci. & Tech. Corp. See* 2011 WL 2690367, *5 (W.D.Pa. July 11, 2011). In fact, *Dilmore* notes that the majority of the District Courts in the Third Circuit have rejected the application of *Twombly* and *Iqbal* to defensive pleadings. *Id.; see also Bayer Cropscience AG v. Dow Agrosciences LLC*, 2011 WL 6934557, *1-2 (D. Del. Dec. 30, 2011). XU has failed to convince this Court that *Twombly* and *Iqbal* apply to Cisco's defensive

Cisco argues that XU must show prejudice for Cisco's defenses to be stricken, and that XU cannot do so. It is undisputed that "[i]n general, even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Fesnak & Assoc's, LLP v. U.S. Bank Nat'l Ass'n*, 722 F.Supp.2d 496, 502 (D. Del. 2010); *Sun Microsystems, Inc. v. Versata Enters.*, 630 F.Supp.2d 395, 407-08 (D. Del. 2009). "A court should not strike a defense unless the insufficiency is 'clearly apparent'" and motions to strike are generally disfavored. *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986); *Seidel v. Lee*, 954 F.Supp. 810, 812 (D.Del. 1996). At the same time, as XU points out, the court may strike "bare bones conclusory allegations." *Sun Microsystems*, 630 F.Supp.2d at 408.

XU has not alleged any prejudice to support striking Cisco's defenses. Cisco's affirmative defenses have been present since Cisco's April 2011 Answer (D.I. 58) and have governed the scope of the case through discovery. XU has had the opportunity to obtain discovery on the bases for and facts underlying Cisco's affirmative defenses, and so is not at risk for the surprise and undue prejudice that justified striking the "bare bones conclusory allegations" in *Fesnak*, 722 F.Supp.2d at 503-04, and *Sun Microsystems*, 630 F.Supp.2d at 409. XU has not complained about those affirmative defenses until now, unlike the plaintiffs in *Fesnak* and *Sun Microsystems* who moved to strike shortly after the affirmative defenses were pled. XU could have cured any prejudice inherent in Cisco's allegations by motion or discovery long ago, and fails to justify the disfavored action of striking those defenses now.

---

pleadings.

**C. XU's motion to dismiss Cisco's counterclaims VI - IX is granted only as to counterclaim VII and counterclaim VIII's inequitable conduct claim.**

XU moved to dismiss Cisco's counterclaims for trade secret misappropriation, common law fraud, unfair competition, and conversion. XU's arguments about Cisco's trade secret misappropriation claim (counterclaim VI) are unavailing; Cisco's allegations that XU's "attempting to pass Cisco's trade secrets off as information that is proprietary and confidential to XU" and "continuing to use, without authorization, hardware and software that Cisco provided to XU containing Cisco's trade secrets" adequately plead that XU used or disclosed Cisco's trade secrets. (D.I. 127, p. 65, ¶¶ 109-115).

The parties' dispute over Cisco's fraud claim (counterclaim VII) narrows to whether their nondisclosure agreement ("NDA") put them in a confidential relationship that gave XU a duty to disclose to Cisco XU's alleged relationship with Cisco's competitor under California law. Under Cisco's proffered case, *Dealertrack, Inc. v. Huber*, the alleged confidentiality agreement creates a confidential relationship for purposes of pleading a claim for constructive fraud and surviving a motion to dismiss.[4] *See* 460 F.Supp.2d 1177, 1183 (C.D. Cal. 2006); (D.I. 127, p. 66, ¶¶ 116-19).

The parties agree that Cisco must allege that XU's omission involved a breach of XU's duty under the NDA. *See Dealertrack*, 460 F.Supp.2d at 1183. Cisco did not allege that XU disclosed confidential information to Cisco's competitor, which could have been read to violate

---

[4] XU's reliance on *Goodworth Holdings, Inc. v. Suh* does not advance XU's position that Cisco has not alleged a confidential relationship, as that Court rejected only the narrower argument that a confidentiality agreement created a fiduciary relationship. *See* 239 F.Supp.2d 947, 960 (N.D. Cal. 2002). The fraud claim was rejected on summary judgment for lack of evidence showing intent. *See id.* at 961.

the NDA, or that XU's alleged nondisclosure of its relationship with Cisco's competitor breached any clause of the NDA or other duty thereunder. *See* (D.I. 127, p. 66, ¶¶ 116-19). Cisco therefore fails to state a claim for constructive fraud under California law. XU's motion to dismiss is granted as to counterclaim VII.

Cisco's counterclaim VIII is a California claim for unfair competition based on two independent theories: XU's alleged fraud on the USPTO, and its "deception of Cisco regarding its parallel relationship." (D.I. 127, p. 67, ¶¶ 120-22). XU argues, and Cisco does not dispute, that the California unfair competition claim based on XU's alleged fraud on the USPTO is preempted by the federal inequitable conduct claims. Unfair competition under the California Business and Professions Code, section 17200, includes "any unlawful, unfair or fraudulent business act or practice." It creates a state cause of action out of violations of other laws, and does not require any other elements such as independent damages. CAL. BUS. & PROF. CODE § 17200; *Sun Microsystems*, 630 F.Supp.2d at 407. Cisco's § 17200 claim based on "XU's fraud on the U.S.P.T.O. in obtaining the patents-in-suit" seeks an alternative or additional remedy for inequitable conduct before the PTO, without any additional elements of proof, and is therefore preempted. *See Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1476-77 (Fed.Cir. 1998); *In re Netflix Antitrust Litigation*, 506 F.Supp.2d 308, 319-20 (N.D. Cal. 2007) (finding a § 17200 claim based on inequitable conduct before the PTO preempted where "plaintiffs would merely be showing that [defendant] engaged in misconduct before the PTO").

Cisco's § 17200 claim based on XU's alleged "deception of Cisco regarding its parallel relationship" fares better. XU argues that because this allegation is duplicative of Cisco's fraud claim, which indeed is dismissed herein, that the § 17200 claim must also be dismissed. Cisco

responds, correctly, that "the issue is whether it was an unfair business practice for XU to conceal its relationship with Genesys." (D.I. 157 at 18). This issue remains germane under § 17200 whether or not Cisco pled it properly in the context of a fraud claim. "[B]ecause the statute 'is written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are unlawful, or unfair, or fraudulent.' . . . '[A] practice may be deemed unfair even if not specifically proscribed by some other law.'" *Sun Microsystems*, 630 F.Supp.2d at 407 (quoting California cases). Cisco's unfair competition counterclaim is dismissed in part, to the extent it relies upon XU's alleged inequitable conduct before the PTO to create the cause of action.

Finally, XU argues that Cisco's counterclaim IX for conversion fails because Cisco "essentially" alleges that XU was a bailee or depository, which requires Cisco to demand return of its property before it can sue for conversion and allege that it did so, and that Cisco did not do either. Cisco disagrees that XU was a bailee or depository subject to the demand requirement. Whether XU was a bailee or depository cannot be determined based on the pleadings alone. XU's motion is therefore denied as to counterclaim IX.

Inasmuch as it may be possible for Cisco to allege the inequitable conduct in a manner that meets the pleading requirements, the dismissals of Counterclaims III, IV, V, VII, and affirmative defenses 3-11 are without prejudice. The dismissal of Counterclaim VIII, to the extent it is based on inequitable conduct before the PTO, is with prejudice. Cisco is granted seven days to file a motion for leave to amend.

An appropriate order will be entered.

14