# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 FAX
jblumenfeld@mnat.com

July 26, 2012 - Original Filing Date

REDACTED - PUBLIC VERSION

The Honorable Richard G. Andrews                    *VIA ELECTRONIC FILING*
United States District Court
  For the District of Delaware
844 North King Street
Wilmington, DE  19801

Re:   *XpertUniverse, Inc. v. Cisco Systems, Inc.*
      C.A. No. 09-157 (RGA) – July 30, 2012 Discovery Conference

Dear Judge Andrews:

Cisco Systems, Inc. ("Cisco") submits this letter to address:  (1) various issues regarding XpertUniverse, Inc.'s ("XU") pursuit of overbroad discovery regarding Cisco's Remote Expert solution, including by unnecessary subpoenas to Cisco customers, and (2) other outstanding discovery issues that should be resolved as the parties approach the July 31 close of non-expert discovery.

1.      Background.  XU is a defunct software startup company that has never had a commercially viable product and, despite years of trying, has never sold its product to a single paying customer.  XU told investors and customers it had a product, which was at various times referred to as Homework911, KnowledgeSHARE, and XpertSHARE (together, "XpertSHARE").  The product supposedly was an integration of third-party software, ███████████ ████████████ which could be used by an organization to match and route seekers to the "BEST AVAILABLE expert" to respond to the seeker's inquiry.  *See* Exh. 1.  This functionality was something ███████████████████████████████████████████  *See* Exh. 2.  XU's own advisory board member, Michael Turillo, ████████████████████████ ████████  *See* Exh. 3.  XU's former CTO, Abe Zelkin, ████████ admitted at his deposition that ████████████████████████████  *See* Ex. 4.  As Mr. Turillo told XU's CEO, Victor Friedman, ██████████████████████████████  *See* Exh. 2.

From 2004 to 2006, XU sought to align itself with Cisco.  ████████████████ ████████████████████.  Cisco provided XU with confidential technical information regarding Cisco's ICM, including Cisco's proprietary MR and ARM interfaces, so XU could perform the

The Honorable Richard G. Andrews
July 26, 2012
Page 2

integration.  XU never completed the integration, and the project ended in January 2007.  XU admits it provided no source code to Cisco; XU also did not provide any functional specifications, design specifications, algorithms or any other documents regarding the technical operation of XpertSHARE to Cisco.  The flow of proprietary technical information went from Cisco to XU, not vice versa.

       2a.    <u>Cisco's Remote Expert Solution</u>.  In June 2011, long after this lawsuit was filed, Cisco introduced its Remote Expert solution.[1]  For no apparent reason other than that it includes the word "expert," XU added Remote Expert as an accused product in its October 2011 Fourth Amended Complaint (D.I. 82).  XU accuses Remote Expert of infringing its '903 patent, which covers a method for matching and routing users to experts.  Yet XU has refused to serve an infringement claim chart, as required by Judge Schiller's case management order (D.I. 76), showing how Remote Expert supposedly infringes that patent.  *See* Exh. 5.  XU also has refused to answer Cisco's Interrogatory No. 4, which asks XU to explain how Remote Expert supposedly infringes the '903 patent.  *See* Exhs. 14-15.  And although XU accuses Remote Expert of misappropriating its "trade secrets," XU has never identified a trade secret supposedly misused by Remote Expert.  In short, XU has never articulated a legitimate basis for implicating Cisco's Remote Expert solution in this litigation.

       Notwithstanding XU's discovery failures, Cisco has produced voluminous documentation showing the development and functionality of Remote Expert, including the Solution Requirements Documents, Design & Implementation Guides, Functional Specifications, and internal commitment documents.  *See, e.g.,* Exhs. 6-8. These documents show the independent development of Remote Expert, years after XU and Cisco ceased discussions, by Cisco employees who never interacted with XU.  These documents also show that Remote Expert, when fully deployed, uses Cisco's <u>prior art</u> ICM router for matching and routing seekers to experts and therefore cannot possibly infringe the '903 patent.[2]  XU should be required to explain its allegation that Cisco's ICM router infringes XU's later-filed '903 patent.  XU continues to press Cisco – and its customers, see below – for additional discovery regarding Remote Expert, yet it refuses to explain how Remote Expert supposedly infringes its later-filed '903 patent, how Remote Expert misuses any XU trade secrets, or what additional documents XU needs to litigate fairly its unspecified claims regarding Remote Expert.  *Cisco respectfully requests that XU be required to set forth its basis for accusing Remote Expert of patent infringement, trade secret misappropriation, or any other violation of XU's rights.*

       2b.    <u>XU's Improper Subpoenas To Cisco's Customers Regarding Remote Expert</u>. Ignoring the facts it already has about the non-infringement and independent development of Remote Expert, and without taking the deposition of Cisco's corporate witness (Al Slamecka), on July 10,  XU served overbroad and burdensome document and testimony subpoenas on two Cisco customers – RBS Citizens Financial Group/Citizens Financial Group, Inc., and BMO Harris Bank.  *See* Exhs. 9-12. XU subpoenaed these customers because they appeared in a press

---

[1]    A "solution" is not a product but rather a collection of usually pre-existing products sold as a package to a particular industry or market segment.

[2]    Some Remote Expert deployments – such as the one at Citizens Bank (see below) – do not include any matching and routing functionality at all, as Cisco has explained to XU.

The Honorable Richard G. Andrews
July 26, 2012
Page 3

release regarding Remote Expert.   XU's subpoenas request "all documents" from these customers regarding all Cisco products – not just Remote Expert.  XU has failed to comply with its Rule 45 obligation to minimize the burden of discovery on non-parties.  In the light of Cisco's complete production of Remote Expert documentation, there was no legitimate basis for XU to burden Cisco's customers with these subpoenas.  That is especially so here, where XU (i) has not articulated a meaningful basis for implicating Remote Expert in this lawsuit, and (ii) where it has refused to explain why Cisco's document production and offer to produce Mr. Slamecka for a deposition regarding Remote Expert are not sufficient to permit fair adjudication of the issue. *Cisco respectfully requests a protective order, under FRCP 26(c), regarding XU's improper subpoenas to Cisco's customers.*

3.     XU's Failure To Serve Claim Charts Re: Other Accused Products.   XU has refused to provide claim charts and/or answer Cisco's Interrogatory No. 4 for numerous products/solutions that XU accuses of infringing the '709 patent (TelePresence Expert On Demand, Quad) and '903 patent (TelePresence Expert On Demand, Virtual Expert Management for Retail, Virtual Expert Management for Financial Services, Expertise Locator).  *See* Exhs. 13-15.  In addition, XU has alleged that Cisco *indirectly* infringes both asserted patents, but has failed to identify which claims Cisco allegedly indirectly infringes, based on what actions by Cisco, and who the direct infringers allegedly are.  XU was required to provide this information by Judge Schiller's order and in response to Cisco's Interrogatory No. 5.  *See* Exh. 13.  **Cisco should not be required to try this case without any disclosures from the plaintiff's regarding its infringement theories**.  *Cisco respectfully requests that XU be ordered to provide a claim chart for each accused product/solution.*

4.     XU's Refusal To State Invention Dates.   XU has refused to state the date on which it contends the alleged inventions of the patents-in-suit were conceived and reduced to practice, as requested by Interrogatory Nos. 1 and 7.  *See* Exhs. 13-15.  This information is solely in the possession of XU, and Cisco is entitled to answers to these questions before the close of discovery.  XU also has refused to state date(s) on which it developed and offered for sale products, i.e., XpertSHARE, that embody the '903 and '709 patents, as requested by Interrogatory No. 2.  *See* Exhs. 13-15.  This information is highly relevant to Cisco's 102(b) defenses (*i.e.*, on-sale, public use and printed publication bars).  *Cisco respectfully requests that XU be ordered to state the dates the inventions claimed in its patents were conceived, reduced to practice, and implemented in the XU product that XU contends embody the inventions.*

5.     XU's Document Production.   XU previously told Cisco and the Court that its document production was "substantially complete," and then made numerous voluminous supplemental productions.  XU intends to produce still more documents by August 10 but will not commit to a date certain for the completion of its document production.  *Cisco respectfully requests an order compelling XU to complete its document production by August 10th.*

Respectfully,

*Jack Blumenfeld*

Jack B. Blumenfeld (#1014)

The Honorable Richard G. Andrews
July 26, 2012
Page 4

JBB/dlw
Enclosures
cc:    Clerk of Court (Via Hand Delivery; w/ encl.)
        All Counsel of Record (Via Electronic Mail; w/ encl.)