IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XPERTUNIVERSE, INC., | ) | |
| | ) | |
| Plaintiff and Counterdefendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-157 (RGA) |
| | ) | |
| CISCO SYSTEMS, INC., | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendant and Counterplaintiff. | ) | |

**DEFENDANT AND COUNTERPLAINTIFF CISCO SYSTEMS, INC.'S OPENING
BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1
RELATING TO PLAINTIFF XPERTUNIVERSE, INC.'S CLAIM FOR COMMON LAW
FRAUD (COUNT III); DECEIT UNDER CALIFORNIA CIVIL CODE §§ 1709, 1710
(COUNT IV); AND RESCISSION (COUNT XII)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendant/Counterplaintiff
Cisco Systems, Inc.*

OF COUNSEL:

MORGAN, LEWIS & BOCKIUS LLP

Kell M. Damsgaard
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

Franklin Brockway Gowdy
Brett M. Schuman
One Market Street, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000

October 31, 2012 - Original Filing Date
November 7, 2012 - Redacted Filing Date

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………………..ii

I.     NATURE AND STAGE OF THE PROCEEDINGS. ......................................................1

II.    SUMMARY OF ARGUMENT. ...................................................................................2

III.   STATEMENT OF RELEVANT FACTS. ......................................................................2

      A.    XU's Relationship With Cisco. ....................................................................2

      B.    XU And Cisco Enter Into Two Cisco Technology Partner Development
             Agreements. ..................................................................................................3

IV.   ARGUMENT. ...........................................................................................................6

      A.    Legal Standard. .............................................................................................6

           1.    Summary Judgment Standard. ..............................................................6

           2.    Rescission and Fraud Under California Law. .........................................7

      B.    Cisco Did Not Fraudulently Induce XU To Enter Into The CTDPAs. .................9

      C.    XU Has Not Satisfied The Other Statutory Prerequisites To Rescission
             Under California Law. ....................................................................................10

      D.    XU's Common Law Fraud and Deceit Under Civil Code §§ 1709, 1710
             Fail As A Matter of Law ................................................................................11

V.    CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .................................................................................................7, 9

Berckeley Inv. Group, Ltd. v. Colkitt,
455 F.3d 195 (3d Cir. 2006) ................................................................................6

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ..........................................................................................6, 7

Costa County Title Co. v. Waloff,
184 Cal. App. 2d 59 (Cal. Ct. App. 1960) .........................................................7, 8

Estate of Wong,
207 Cal. App. 4th 366 (Cal. Dist. Ct. App. 2012)....................................... 8, 10, 11

Gold v. Maxwell,
176 Cal. App. 2d 213 (Cal. Ct. App. 1959) ......................................................8, 9

Lamont v. New Jersey,
637 F.3d 177 (3d Cir. 2011) ............................................................................6, 7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) ...........................................................................................7

Orient Handel v. United States Fid. & Guar. Co.,
192 Cal. App. 3d 684 (1987 Cal. Ct. App.) .......................................................8

Rouse v. Morgan,
108 Cal. App. 315 (Cal. Ct. App. 1930)............................................................8

Tri-State Energy Solutions, LLP v. KVAR Energy Sav. Inc.,
845 F. Supp. 2d 615 (D. Del. 2012) ................................................................6, 7

FEDERAL RULES

Fed. R. Civ. P.
56(a)...................................................................................................................6
56(c)(1) ..............................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**STATE STATUTES**

Cal. Civ. Code
    §§ 1565-1590 ......................................................................................................1
    §§ 1688-1693 ......................................................................................................1
    § 1691 .................................................................................................................8
    § 1709 ........................................................................................................*passim*
    § 1710 ........................................................................................................*passim*

## I.   NATURE AND STAGE OF THE PROCEEDINGS

On March 10, 2009, Plaintiff XpertUniverse, Inc. ("XU") sued Cisco Systems, Inc. ("Cisco") asserting claims for, among other things, patent infringement and trade secret misappropriation.  There was no claim for rescission in the original complaint and no mention of the two partner agreements executed in 2005 and 2006 between Cisco and XU.   XU subsequently filed an amended and second amended complaint, on May 14, 2009 and May 26, 2009, respectively.  D.I. 10, 12.  Again, there was no rescission claim and no mention of the partner agreements between Cisco and XU in these complaints.

On July 6, 2009, Cisco's counsel wrote to XU's counsel on various issues, including the fact that ███████████████████████████████████████████████ ██████.  Ex. 135, p. 4.[1]

XU subsequently filed a third amended complaint.  D.I. 43.  For the first time in its third amended complaint, XU purported to add a claim for rescission of the two partner agreements ███████████████████████.  In its operative, Fourth Amended Complaint ("FAC"), XU alleges that it is entitled to rescind these agreements, claiming it was fraudulently induced to sign them.  *See* D.I. 82, ¶ 249.  The FAC also included claims for common law fraud and deceit under Cal. Civ. Code §§ 1709, 1710.  *Id.*, ¶¶ 142-168.

Discovery is over.  XU has no evidence supporting its request for rescission of the partner agreements it signed containing ███████████████████.  Nor is there any evidence to support XU's claims for fraud and deceit.  Cisco now moves for partial summary judgment on XU's rescission claim (Count XII (Rescission Under California Civil Code §§ 1565-1590, 1688-

---

[1] Unless otherwise noted, all exhibits cited herein are attached to the Omnibus Declaration of Brett M. Schuman in Support of Cisco's Motions for Partial Summary Judgment Nos. 1-11 and Motions to Exclude The Expert Testimony of XpertUniverse's Retained Experts Walter Bratic and Illah Nourbakhsh ("Omnibus Decl."), filed concurrently herewith.

1693)), common law fraud claim (Count III), and statutory fraud (Count IV (Deceit Under Cal. Civ. Code §§ 1709, 1710)).  This is Cisco's opening brief in support of that motion.

## II.    SUMMARY OF ARGUMENT

The Court should grant partial summary judgment to Cisco because, after extensive discovery, XU has no evidence to justify rescission of the two partner agreements it entered into with Cisco.  XU has no evidence that Cisco intended to defraud XU, an essential element of XU's rescission claim.  Further, XU cannot establish two statutory prerequisites to the rescission remedy under California law.  First, XU did not promptly notify Cisco of its desire to rescind the agreements.  Second, XU benefited extensively from entering into the agreements it now seeks to rescind and has not returned these benefits to Cisco.  The lack of evidence of fraudulent intent also dooms XU's claims for common law and statutory fraud.

## III.   STATEMENT OF RELEVANT FACTS

### A.    XU's Relationship With Cisco.

In mid-2004, XU began discussing with Cisco's Customer Contact Business Unit ("CCBU") the possibility of integrating XU's XpertSHARE application with Cisco's contact center routing platform.  *See* Sinclitico Decl.[2] Ex. 1 at 52:20-24 (Jordan Tr.) ███████████

████████████████████████████████████████████████████████████

██████████ ("NDA").  Ex. 6

Beginning in late 2004, Cisco's CCBU engineers presented XU with several technical options for the proposed integration.  Sinclitico Decl., Ex. 2 at 60:17-61:3, 62:17-22, 109:8-23, 128:4-19 (Hernandez Tr.).  Cisco also provided confidential and proprietary information to XU

---

[2] Declaration of Dennis J. Sinclitico in Support of Cisco's Motion for Partial Summary Judgment No. 1 Relating to XpertUniverse's Claim for Common Law Fraud (Count III), Deceit Under California Civil Code §§ 1709, 1710 (Count IV), and Rescission (Count XII), ("Sinclitico Declaration"), filed concurrently herewith.

regarding Cisco's ICM/IPCC and related components, including its Media Routing ("MR") and Agent Reporting and Management ("ARM") interfaces.  *See id.*, Ex. 1at 115:2-116:15 (Jordan Tr.). ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████. *Id.* at 151:20-152:15 (Jordan Tr.)

##### B.     XU And Cisco Enter Into Two Cisco Technology Partner Development Agreements.

XU then became a Cisco technology "partner" by signing up for, and being admitted to, Cisco's Technology Developer program.  ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Exs. 7 at CISCO00150043, 8 at CISCO00227781.

On April 29, 2005, XU executed the first of two Cisco Technology Developer Program Partner Agreements (the "2005 CTDPA").  Elizabeth Eiss, XU's President, executed the 2005 CTDPA on XU's behalf.  Ex. 7 at CISCO00150054; Sinclitico Decl., Ex. 3 at 182:11-25 (Eiss Tr.) ██████████████████████████ Ex. 7 at CISCO00150050, § 10.1.  On September 6, 2006, XU executed the second Cisco Technology Developer Program Agreement (the "2006 CTDPA").  Ex. 8 at CISCO00227794-95; Sinclitico Decl., Ex. 4 at 278:12-279:14 (Zelkin Tr.).  Abraham Zelkin, XU's CTO, executed the 2006 CTDPA on behalf of XU.  *Id.* ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

Exs. 7 at CISCO00150053, 8 at CISCO00227794.  Thus, by accepting the contacts, Ms. Eiss and

Mr. Zelkin ███████████████████████████████████████  which they

undoubtedly did as XU's President (Ms. Eiss) and Chief Technology Officer (Mr. Zelkin).  *Id.*

Despite being given the opportunity just prior to execution, neither ███████████████████

█████████████████████

The CTDPAs stated the parties' expectations regarding the sharing of confidential

information.  Specifically, ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

██████████████████████████████████████

██████████████████████████████████████

Exs. 7 at CISCO00150051 §§ 11.1, 11.2; *see also* Ex. 8 at CISCO00227784, § 5.0.



Ex. 8 at CISCO00227785; *see also* Ex. 7 at CISCO00150052, § 11.8.

Finally, both of the CTDPAs contain



Ex. 7 at CISCO00150050, § 9.0; Ex. 8 at CISCO00227786, § 7.2.

Entering into these CTDPAs was a necessary step to XU receiving important benefits from Cisco. *First*, the CTDPAs were

*See* Ex. 8 at CISCO00227782, Recital C

5



*Second*,

XU sought to

Ex. 136.  In order to do these things,

*Third*, as XU knew, membership in

Cisco's Technology Developer program was

. Ex. 137.

## IV.  ARGUMENT

### A.  Legal Standard.

#### 1.  Summary Judgment Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The Third Circuit has characterized summary judgment as "put up or shut up time for the non-moving party."  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal quotations and citations omitted).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party."  *Tri-State Energy Solutions, LLP v. KVAR Energy Sav. Inc.*, 845 F. Supp. 2d 615, 618 (D. Del. 2012) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (internal citations omitted)). The burden on the moving party may be discharged by pointing out to the district court that there

is an absence of evidence supporting the non-moving party's case. *Id.* (citing *Celotex*, 477 U.S. at 323).

Once the moving party satisfies this initial burden, the non-movant must demonstrate the existence of genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the non-moving party must support its assertions by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute." FED. R. CIV. P. 56(c)(1).

"A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Tri-State Energy*, 845 F. Supp. 2d at 618 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986) (internal quotations omitted)). "If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law." *Id.* (citing *Celotex*, 477 U.S. at 322).

## 2. Rescission and Fraud Under California Law.

"There is no arbitrary right to rescind. Allegations of fraud and misrepresentation, unsupported in fact, do not form the legal basis for rescinding a contract." *Contra Costa County Title Co. v. Waloff*, 184 Cal. App. 2d 59, 65 (Cal. Ct. App. 1960). "One seeking rescission on account of fraud must be actually deceived by misrepresentation of a material fact and the other party must have intended to deceive by a misrepresentation of such material fact." *Id.* Further, the party seeking to rescind must rely upon the fraudulent representation to his injury and

damage before he can have the contract rescinded.  *Id.* (citing *Rouse v. Morgan*, 108 Cal. App. 315, 320 (Cal. Ct. App. 1930)).

There are also several statutory prerequisites to rescission under California law, including the obligation on the part of the rescinding party to provide prompt notice of rescission and also to restore to the non-rescinding party all of the value delivered by the non-rescinding party under the contract:

> The steps that a party must take in order to effect a rescission of the contract are set forth in Civil Code section 1691, which states, in part: "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so."

*Estate of Wong*, 207 Cal. App. 4th 366, 382-83 (Cal. Dist. Ct. App. 2012) (rejecting rescission claim because "appellant has not established or even argued that she followed the steps necessary to rescind her agreement").

With respect to common law and statutory fraud, the plaintiff has the burden of proving the following elements:   (1) misrepresentation (false representation, concealment, or nondisclosure) of a material fact; (2) knowledge of falsity or lack of reasonable ground for belief in the truth of the representation; (3) intent to induce reliance; (4) actual and justifiable reliance by plaintiff; and (5) resulting damage.  *Orient Handel v. United States Fid. & Guar. Co.*, 192 Cal. App. 3d 684, 693 (Cal. Dist. Ct. App. 1987) (citing Cal. Civ. Code §§ 1709, 1710).

Under California law, there is a "presumption against fraud; it approximates in strength that of innocence of crime.  The presumption will support a finding in accordance with it even in the face of contrary evidence.   Further, fraud must be proved by **clear and convincing evidence**."  *Gold v. Maxwell*, 176 Cal. App. 2d 213, 218 (Cal. Ct. App. 1959) (emphasis added).

Where, as here, the non-moving party's claims are subject to a heightened evidentiary standard, the opposition must satisfy this heightened standard. *Anderson*, 477 U.S. at 254 (no "genuine issue" exists where the evidence presented in opposing the motion is "of insufficient caliber or quantity to allow a rational finder of fact to find . . . clear and convincing evidence.").

**B.    Cisco Did Not Fraudulently Induce XU To Enter Into The CTDPAs.**

In the FAC, XU asserts that "Cisco's intent in inducing XpertUniverse to click-through the 2005 and 2006 Click-Through Agreements was . . . an attempt to limit its liability for misappropriating XpertUniverse's valuable intellectual property by including provisions in the 2005 and 2006 Click-Through Agreements that narrowed the scope of what type of information would be kept confidential and an attempt to limit Cisco's liability for breach of its confidentiality obligations." D.I. 82 at ¶¶ 149, 162, 250.

Discovery is now closed and XU does not have a *scintilla* of evidence to support these allegations. XU has no evidence that Cisco intended to defraud XU in any way by inviting XU to join its Technology Developer partner program.

To the contrary, there is overwhelming evidence demonstrating the legitimate business reasons, and benefits to XU, flowing from entering into these partner agreements. Until the 2005 CTDPA was executed, the only contract between the parties was the 2004 NDA. The NDA ███ ████████████████████████████████████████████████████████ The 2005 CTDPA provided ███████████████████████████████████████████ *See* Sinclitico Decl., Ex. 5 at 10:13-19 (Daniels Tr.). Among other things, the CTDPAs ████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ Ex. 8 at CISCO00227789, CISCO002277893. Pursuant to the CTDPAs, Cisco in fact ████████████████████████████████████████████████ ██████████████████████████████ Sinclitico Decl. Ex. 6 at 38:9-12 (DePinto Tr,); Exs. 139,

9

140.  Cisco would not have done this if XU had not been a Cisco partner.  Cisco also ██████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████ Sinclitico Decl., Ex. 4 at 157:21-158:8 (Zelkin Tr.).  Cisco

would not have done this, either, if XU had not been a member of a Cisco partner program.

Sinclitico Decl., Ex. 5 at 11:12-12:7 (Daniels Tr.); Ex. 136.

Although XU has no evidence of fraud by Cisco at any time, it is worth noting that in

order to prove its fraudulent inducement/rescission/fraud claims XU would have to prove that

Cisco intentionally made fraudulent representations to XU <u>before</u> XU entered into the CTDPAs.

XU cannot do this.  For example, there is no evidence that Cisco "falsely offer[ed] to confer the

designation of 'Solutions Plus' to XpertUniverse," *see* D.I. 82 (FAC, ¶243), prior to April 29,

2005, when XU executed the first CTDPA.  The first mention of Solutions Plus in any discovery

document is ███████████████.  Sinclitico Decl., Ex. 7 at XU-0056444.[3]

In short, XU has adduced no evidence supporting its allegation that Cisco fraudulently

induced it to enter into either CTDPA.  The evidence is that XU entered into the agreements for

good business reasons.  Cisco is entitled to summary judgment on XU's rescission claim.

**C.     XU Has Not Satisfied The Other Statutory Prerequisites To Rescission Under California Law.**

Under California law, "[t]he court does not rescind contracts but only affords relief based

on a party effected rescission.  Both the grounds for rescission and the means by which parties

may rescind their contract are governed by statute." *Estate of Wong*, 207 Cal. App. 4th at 383.

---

[3] Because membership in the Technology Developer program was ████████████████████ ████████████████████████████████████████, Ex. 137, XU cannot simultaneously maintain its claim for rescission of the CTDPAs and its other claims alleging that Cisco wrongfully denied XU entry into the Solutions Plus level partner program.

A party seeking rescission must, "promptly upon discovering the facts which entitle him to rescind . . . [g]ive notice of rescission to the party as to whom he rescinds." *Id.* Here, it is undisputed that XU provided no such notice to Cisco. Indeed, and contrary to its statutory obligation, XU waited until its third amended complaint, filed in May 2010, to seek rescission of the contracts it entered into in 2005 and 2006. *Compare* D.I. 2, 10, 12 *with* D.I. 43, 82. And the circumstances of that amendment, set forth above, strongly suggest that the claim was merely an afterthought based upon ████████████████████████████████████████ ████████████████ *See* Ex. 135, p. 4.

A party seeking rescission also must "restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." *Estate of Wong*, 207 Cal. App. 4th at 383. Here, it is undisputed that XU failed to do this. Cisco provided XU with extensive benefits under the CTDPA including ████████████████████████ ████████████████████████████████████████████████████████████████ Cisco's damages expert, Mr. Wagner, has valued these benefits ████████ Ex. 138 at p. 4. XU has never offered to return these benefits. Therefore, Cisco is entitled to summary judgment on XU's rescission claim as a matter of law.[4]

### D.   XU's Common Law Fraud and Deceit Under Civil Code §§ 1709, 1710 Fail As A Matter of Law.

XU alleges both common law fraud (Count III) and deceit under Cal. Civ. Code §§ 1709, 1710 (Count IV). D.I. 82, ¶¶ 142-154 and 155-168. The allegations for both counts are virtually identical, and the core allegations are that Cisco acted fraudulently by misappropriating XU's

---

[4] Indeed, contrary to its obligations under California law, XU includes claims in the FAC for breach of the very agreements it seeks to rescind. *See* D.I. 82 (FAC, Counts X (Breach of 2005 CTDPA) and XI (Breach of 2006 CTDPA)).

"trade secrets, confidential information, concepts, know-how and strategies" and wrongfully inducing XU to sign the CTDPAs.  As addressed in this Motion, as well as Cisco's Motions for Summary No. 3 (trade secret misappropriation) and No. 11 (breach of contract claims), XU has adduced <u>no evidence</u> that Cisco defrauded XU.  Contrary to XU's <u>allegations</u>, all of the <u>evidence</u> shows that Cisco in good faith worked with XU to try to get XU to develop a version of XU's XpertSHARE application that would work with Cisco's contact center routing platform.  XU failed to deliver the product, customers did not show interest in it, and the relationship ended. Cisco did not fraudulently induce XU to sign the CTDPAs, nor did it breach any written agreements with XU.  *See* Cisco Motion for Summary Judgment No. 11.  Cisco also did not misappropriate any XU trade secrets.  *See* Cisco Motion for Summary Judgment No 3.  Because XU had not adduced any evidence to support its allegations of fraud and deceit, XU's fraud claims fail as a matter of law.

## V.     CONCLUSION

For all of the foregoing reasons, Cisco respectfully requests that the Court grant Cisco's motion for summary judgment with respect to Counts III (Common Law Fraud), IV (Deceit Under California Civil Code §§ 1709, 1710), and XII (Rescission) of XU's FAC.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com
*Attorneys for Defendant/Counterclaimant
Cisco Systems, Inc.*

OF COUNSEL:

MORGAN, LEWIS & BOCKIUS, LLP

Kell M. Damsgaard
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

Franklin Brockway Gowdy
Brett M. Schuman
One Market Street, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000

October 31, 2012  - Original Filing Date
6627574
 November 7, 2012 - Redacted Filing Date

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 31, 2012, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                *VIA ELECTRONIC MAIL*
Jonathan Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE  19801

Joseph Diamante, Esquire                            *VIA ELECTRONIC MAIL*
Charles E. Cantine, Esquire
Jason Sobel, Esquire
Alex Solo, Esquire
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 7, 2012, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                          *VIA ELECTRONIC MAIL*
Jonathan Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE  19801

Joseph Diamante, Esquire                                     *VIA ELECTRONIC MAIL*
Charles E. Cantine, Esquire
Jason M. Sobel, Esquire
Barry Clayton McCraw, Esquire
Kenneth L. Stein, Esquire
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY  10038

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)