IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XPERTUNIVERSE, INC., | ) | |
| | ) | Civil Action No. 09-157 (RGA) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | **PUBLIC VERSION** |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S CORRECTED REPLY BRIEF IN SUPPORT OF ITS *DAUBERT*
MOTION TO LIMIT THE EXPERT TESTIMONY OF SANDEEP CHATTERJEE**

OF COUNSEL:

Joseph Diamante
Kenneth L. Stein
Charles E. Cantine
Jason M. Sobel
B. Clayton McCraw
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
(212) 806-5400

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff XpertUniverse, Inc.*

Dated: January 7, 2013
Public Version: January 11, 2013

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. Dr. Chatterjee's Invalidity Opinion is Unreliable ....................................................2

    B. Dr. Chatterjee's Invalidity Opinion is Not Helpful to the Jury. .............................4

    C. The Probative Value of Dr. Chatterjee's Testimony is Substantially Outweighed by the Danger of Unfair Prejudice. ......................................................5

III. CONCLUSION .....................................................................................................................7

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adenta GmbH v. Orthoarm, Inc.*,
501 F.3d 1364 (Fed. Cir. 2007) ...................................................................................... 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) .................................................................................................. 1, 5

*Pfaff v. Wells Elecs., Inc.*,
525 U.S. 55 (1999) ........................................................................................................ 2

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009) ...................................................................................... 4

Plaintiff, XpertUniverse, Inc. ("Plaintiff" or "XU") hereby submits its Reply Brief In Support Of Its *Daubert* Motion To Limit The Expert Testimony Of Sandeep Chatterjee (D.I. 396).

## I. INTRODUCTION

In its opposition brief (D.I. 479), Cisco ignores the fundamental point of XU's motion—namely, that, in forming his opinions, Dr. Chatterjee relies upon XU source code files that were modified after April 2, 2004 (the "critical date") and, as result, Dr. Chatterjee cannot say based on anything other than pure speculation that the inventions described and claimed in XU's '709 and '903 patents were on-sale or in public use prior to the critical date.

In addition, Cisco repeatedly, and falsely, claims that XU "is not challenging Dr. Chatterjee's opinion that the inventions claimed in the '709 patent and the '903 patent were implemented in XU's source code *prior to the critical date*." (*See* Cisco's Opp. at 2 (emphasis added) and 8.) But that is precisely the aspect of Dr. Chatterjee's opinion that XU challenges. As XU explained in its opening brief, even assuming the source code reviewed by Dr. Chatterjee implements the claimed inventions of the '709 and '903 patents (which XU disputes), "Dr. Chatterjee does not know, nor can he derive from any analysis of the source code, whether that particular source code was ever executed or otherwise implemented in a way that *would render the claimed inventions on sale and/or in public use prior to the critical date*." (XU's Br. at 1 (emphasis added).)

Dr. Chatterjee applied no special expertise, knowledge or scientific method in reaching his opinion that the XU source code he relied upon was in any software system prior to the critical date, much less one that was in public use or on sale at that time. Instead, he simply adopted a position that supports Cisco's defenses in this case. His anticipated testimony

regarding the "on sale"/"public use" issues is unreliable, would be confusing to the jury and highly prejudicial to XU. It should be precluded.

## II. ARGUMENT

### A. Dr. Chatterjee's Invalidity Opinion is Unreliable

Cisco presents five arguments as to why Dr. Chatterjee's methodology for determining the "on sale"/"public use" issues was supposedly reliable. None have merit. And, notably, none address the critical issue here—namely, that, in forming his opinions, Dr. Chatterjee relied upon XU source code files that were modified after the critical date and, therefore, Dr. Chatterjee cannot reasonably conclude, based upon those files, that the inventions described and claimed in XU's '709 and '903 patents were on sale or in public use prior to the critical date. Each of Cisco's arguments is addressed in turn below.

*First*, Cisco argues that "Cisco does not have to prove that the code XU used in the ▊▊▊▊ or in any other demo, is the same as the source code cited by Dr. Chatterjee." (Cisco's Opp. at 4.) But Cisco *does have to prove* that the source code cited by Dr. Chatterjee was used in some software (whether it is the ▊▊▊▊ another demo, or other software) that was in public use or on sale before the critical date, as even the cases cited by Cisco explain. (*See* Cisco's Opp. at 4-5, citing *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1999) ("First, the product [embodying the patented invention] must be the subject of a commercial offer for sale") and *Adenta GmbH v. Orthoarm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007) ("A public use includes any public use of the claimed invention...").) Cisco, however, cannot do that because Dr. Chatterjee reviewed and relied upon source code files that were modified after the critical date. (XU's Br. at 5.) Again, Dr. Chatterjee simply cannot rely upon source code files that were

2

modified after the critical date to prove that there was a public use or offer for sale before the critical date.

*Second*, Cisco argues that Dr. Chatterjee properly determined that the '709 and '903 patented inventions were "ready for patenting" prior to the critical date (one of the prongs for the "on-sale" bar test) because "he opined that each element of the asserted claims of the asserted patents was implemented by the source code." (Cisco's Opp. at 5.) But that begs the critical issue here—again, the source code files that Dr. Chatterjee relied upon were modified after the critical date and he has no way of knowing what their content was prior to the critical date.

*Third*, Cisco argues that "[h]aving a 'finished product' is not a requirement for meeting either the on-sale bar or the public use bar; the relevant comparison is between the source code and XU documents, and the patent claims." (Cisco's Opp. at 5-6 (emphasis removed).) But, once again, Dr. Chatterjee relied upon source code files that were modified after the critical date and Dr. Chatterjee cannot use them as a basis for his opinion that the patented inventions were in public use or offered for sale prior to the critical date.[1]

*Fourth*, Cisco argues that "[d]espite the missing files [in the source code reviewed by Dr. Chatterjee], Dr. Chatterjee was able to find sufficient evidence to support his opinion that the inventions claimed in XU's patents were implemented in XU's source code." (Cisco's Opp. at 6.) But XU's motion does not seek to preclude Dr. Chatterjee from testifying on that subject. Instead, it only seeks to preclude him from testifying regarding whether the inventions of the

---

[1] Cisco also asserts that "Dr. Chatterjee was entitled to assume, based on XU's discovery responses, that the code he reviewed is the code that was developed for XU's products." (Cisco's Opp. at 6.) Once again, however, the issue here is whether Dr. Chatterjee was entitled to conclude that source code files modified after the critical date were included in software prior to the critical date—he was not. Moreover, as numerous XU witnesses testified, XU never had a finished product that it could offer for sale and that the system it was developing was constantly being modified and tested. (*See, e.g.*, XU's Br. at 12-13, last paragraph (citing various references).)

3

'709 and '903 patents were on sale or in public use prior to the critical date—facts that he could not reasonably derive from the source code files he relied upon.

*Fifth*, Cisco argues that "[b]ased on his experience in developing software products and source code, Dr. Chatterjee opined that the source code files that he cited were included in XU's product as of April 2, 2003." (Cisco's Opp. at 7.) But that is inaccurate and misleading—contrary to Cisco's implied assertion, Dr. Chatterjee did not opine that ***the specific source code files that he reviewed and relied upon*** were included in XU's product system as of April 2, 2003. Nor could he, since those files had been modified after April 2, 2003 (*i.e.*, the specific files he relied upon plainly did not exist prior to April 2, 2003).[2]

### B. Dr. Chatterjee's Invalidity Opinion is Not Helpful to the Jury.

Cisco asserts that "Dr. Chatterjee's opinions will be helpful to the jury, specifically in understanding what the source code produced by XU represents, how it was used, and how it relates to XU's offers for sale and demonstrations to potential customers." (Cisco's Opp. at 7.) In so doing, Cisco clouds the issues raised by this motion. Again, XU's motion is not seeking to preclude Dr. Chatterjee from testifying regarding his understanding of what the source code produced by XU represents or how it was used. Instead, it seeks to preclude Dr. Chatterjee from offering an opinion that the claimed inventions of the '709 and '903 patents were on sale or in public use prior to the critical date. As XU explained on pages 15-16 of its opening brief, that

---

[2] Cisco also attempts to shift the burden of proof to XU, stating that XU's opening brief lacks "any positive assertion or evidence that the source code actually was changed during development in ways that are relevant to the invention at issue." (Cisco's Opp. at 6-7.) However, not only is it Cisco's burden to prove invalidity by "clear and convincing evidence" (*see Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009)), which Cisco has failed to do, but, as Cisco knows, XU has repeatedly explained that, prior to the critical date, the XU system did not contain the claimed inventions of the '709 and '903 patents. (*See, e.g.*, Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment No. 2 Relating To Validity Of U.S. Patent Nos. 7,366,709 and 7,499,903 (D.I. 423) at 8-9 (explaining that the patented features were not embodied in XU's system prior to the critical date); *see also id.* at 10-12, 19-20.)

4

opinion is not based on any "scientific, technical or specialized" knowledge. Instead, Dr. Chatterjee is simply acting as Cisco's counsel's mouthpiece. (*See* XU's Br. at 16.)

Indeed, even Cisco has difficulty articulating why Dr. Chatterjee should be able to offer opinions regarding whether the claimed inventions were on sale or in public use prior to the critical date—explaining that "Dr. Chatterjee can, through his testimony, aid the jury in understanding how the code produced by XU related to its work on developing its products, and how that code was incorporated and used by XU to market its products." (Cisco's Opp. at 7.) That explanation lacks any connection to the "on sale"/"public use" issues and certainly provides no basis for permitting his opinion testimony regarding XU source code that predates source code that he actually reviewed and relied upon.

### C. The Probative Value of Dr. Chatterjee's Testimony is Substantially Outweighed by the Danger of Unfair Prejudice.

XU explained in its opening brief that it is important for courts to maintain *Daubert's* standards because experts often exude an aura of authority that can lead juries to unjustifiably give more weight to their testimony and that, here, there is a danger that the jury will give undue weight to Dr. Chatterjee's opinions regarding whether the claimed inventions were on sale or in public use simply because of his status as an "expert." (*See* XU's Br. at 17.) XU also explained that the jury is capable of understanding and assessing the evidence as to whether the claimed inventions were on sale or in public use without Dr. Chatterjee's speculative opinions on that subject. (*See* XU's Br. at 17-18.) Cisco does not respond to those points, but instead makes two unrelated arguments—neither of which have merit.

*First*, Cisco asserts that there is no basis for excluding Dr. Chatterjee's opinions because "XU repeatedly says that it is not seeking to exclude Dr. Chatterjee's opinion that the XU source code included the patented inventions ***prior to the April 2, 2003 critical date***." (Cisco's Opp. at

5

8 (emphasis added).) But, again, that is precisely the aspect of Dr. Chatterjee's opinion that XU challenges. As XU explained in its opening brief, even assuming that the source code reviewed by Dr. Chatterjee implements the patented inventions (which XU disputes), "Dr. Chatterjee does not know, nor can he derive from any analysis of the source code, whether that particular source code was ever executed or otherwise implemented in a way that *would render the claimed inventions on sale and/or in public use prior to the critical date.*" (XU's Br. at 1 (emphasis added).)

*Second*, Cisco asserts that there is no basis for excluding Dr. Chatterjee's opinions because "Dr. Chatterjee is not offering the opinion that the source code he reviewed is precisely the same code used in ▉▉▉▉▉" and that "Cisco does not need to prove that the source code used in ▉▉▉▉▉ included the patented inventions." (Cisco's Opp. at 8.) In so doing, Cisco simply repeats one of its earlier arguments without addressing whether the probative value of that testimony outweighs its prejudicial effect. In addition, as explained above, Cisco's argument is misplaced. Cisco in fact *does have to prove* that there was XU source code used in software that was in public use or on sale more than a year before the critical date—yet Dr. Chatterjee relies upon source code files in forming his opinions that were modified after the critical date.[3]

---

[3] Also, contrary to Cisco's assertion, the fact that Dr. Nourbakhsh responded to Dr. Chatterjee's opinions regarding the XU source code in his rebuttal report (Cisco's Br. at 8-9) is irrelevant to this motion. Dr. Chatterjee's opinions regarding the "on sale"/"public use" issues simply are unreliable, are not helpful to the jury and will result in unfair prejudice to XU.

6

## III. CONCLUSION

Based on the foregoing, XU's *Daubert* Motion To Limit The Expert Testimony Of Sandeep Chatterjee should be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph Diamante
Kenneth L. Stein
Charles E. Cantine
Jason M. Sobel
B. Clayton McCraw
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
(212) 806-5400

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

Dated: January 7, 2013
1088830

*Attorneys for Plaintiff XpertUniverse, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that, on January 11, 2013, the within document was electronically filed with the Clerk of the Court using CM-ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

1084361