IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| XPERTUNIVERSE, INC., ) | |
| ) | Civil Action No. 09-157 (RGA) |
| Plaintiff ) | |
| ) | |
| vs. ) | JURY TRIAL DEMANDED |
| ) | |
| ) | |
| CISCO SYSTEMS, INC., ) | **PUBLIC VERSION** |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
*DAUBERT* MOTION TO PRECLUDE DEFENDANT'S DAMAGES EXPERT,
MICHAEL J. WAGNER FROM OFFERING TECHNICAL TESTIMONY**

OF COUNSEL:

Joseph Diamante
Kenneth L. Stein
Charles E. Cantine
Jason M. Sobel
B. Clayton McCraw
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
(212) 806-5400

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff XpertUniverse, Inc.*

Dated: January 4, 2013
**Public Version: January 11, 2013**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................. 1

II. ARGUMENT ............................................................................................................... 2

III. CONCLUSION ............................................................................................................ 5

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ............................................................................................................4

*Self Directed Placement Corp. v. Control Data Corp.,*
    908 F.2d 462 (9th Cir. 1990) ............................................................................................4, 5

*Walker v. University Books, Inc.,*
    193 U.S.P.Q. 596 (N.D. Cal. 1977) .......................................................................................5

*Walker v. University Books, Inc.,*
    602 F.2d 859 (9th Cir. 1979) .................................................................................................5

**RULES**

Cal. Civ. Code 3426.1 ....................................................................................................................4

35 U.S.C. §103 ...............................................................................................................................4

## I. PRELIMINARY STATEMENT

Cisco argues that briefing on Michael Wagner's testimony should be "focused solely" on Mr. Wagner's opinion with respect to XpertUniverse's Trade Secret Nos. 40-46 because Mr. Wagner expressly limited his opinion in his deposition to XpertUniverse's Trade Secret Nos. 40-46. (Def.'s Opp. at 2 n.1.) Accordingly, Cisco does not oppose XpertUniverse's motion insofar as it seeks to exclude Mr. Wagner from testifying as to the opinion identified in his report that all of XpertUniverse's trade secrets have no value and thus do not qualify as trade secrets. (Pl.'s Br. at 9-11.) Thus, this Court should preclude Cisco from proffering an opinion from Mr. Wagner as to the rest of XpertUniverse's trade secrets.

Cisco does not dispute (because it cannot) that Mr. Wagner has no experience in the expert location and collaboration field, the field to which XpertUniverse's trade secrets relate. Instead, Cisco argues that XpertUniverse's trade secrets 40-46 are not technical and therefore Mr. Wagner needs no special qualification to provide an opinion as to whether they qualify as trade secrets or have value (a requisite element of a trade secret). But Cisco does not satisfy its burden of demonstrating that Mr. Wagner is in fact qualified to opine that trade secrets 40-46 do not qualify as trade secrets. Instead Cisco flippantly argues that Mr. Wagner "knows a valueless trade secret when he sees it." (Def.'s Opp. at 2.) Indeed, that is the extent of Mr. Wagner's methodology that he used in forming his opinion that trade secrets 40-46 do not qualify as trade secrets. Apparently, Cisco has chosen to embrace, because it cannot overcome, the facts that:

[redacted]

- Mr. Wagner did nothing in his report other than provide his own *ipse dixit* that the trade secrets were common and well-known. (*Id.* (citing Wagner Rebuttal ¶¶222-225 (Sobel Ex. 4).)

## II. ARGUMENT

Cisco argues that trade secrets 40-46 are not technical and therefore Mr. Wagner needs no technical expertise in order to opine on them. But trade secrets 40-46 all relate to the expert location and collaboration field and Mr. Wagner has no experience in that field. Cisco erroneously argues that XpertUniverse's expert, Walter Bratic, also opines as to the value of XpertUniverse's trade secrets. (Def.'s Opp. at 2 (citing Bratic Report ¶¶81-85).) To the contrary, Mr. Bratic explicitly relies upon the opinion of XpertUniverse's technical expert, Dr. Nourbakhsh, as to the value of XpertUniverse's trade secrets. (Bratic Report ¶¶81-85.) Mr. Bratic does not opine that XpertUniverse's trade secrets have value and therefore qualify as trade secrets.

Cisco asserts that Mr. Wagner is qualified to opine that trade secrets 40-46 do not qualify as trade secrets and/or have no value because of Mr. Wagner's experience as a management consultant and as a financial expert in other trade secret cases. (Def.'s Opp. at 2-5.) But Cisco does not demonstrate how that generic experience qualifies Mr. Wagner to opine that trade secrets 40-46 do not qualify as trade secrets.

According to Cisco, Mr. Wagner's experience in twenty-five other trade secret cases provides him with a special power to "know[] a valueless trade secret when he sees it." (Def.'s Opp. at 2.) But Cisco does not identify any experience or skills derived from Mr. Wagner's role as a financial expert in other trade secrets cases that provide him with the ability to know whether trade secrets 40-46 are generally known to the public or would provide a commercial advantage to a competitor in the expert location and collaboration field.

Cisco mischaracterizes Mr. Wagner's management consulting experience stating that he "possesses thirty five years of management consulting experience…" *Id.* Mr. Wagner testified

2

that his qualifications to give an opinion as to trade secrets 40-46 are seven and a half years of experience as a management consultant. (Pl.'s Br. at 4 (citing Wagner Tr. 115:25-116:13 (Sobel Ex. 5)).) That fact notwithstanding, as XpertUniverse demonstrates in its opening brief, Mr. Wagner provides no examples from his management consulting experience that demonstrate where he observed the trade secrets being known or used. (Pl.'s Br. 5, 11.) In response, Cisco blames XpertUniverse for not asking Mr. Wagner more questions (Def.'s Opp. at 3), but Cisco does not satisfy its burden (*see* Pl.'s Br. at 6) of demonstrating what management consulting experience provides Mr. Wagner with the requisite knowledge to provide the opinion that trade secrets 40-46 do not qualify as trade secrets. (Def.'s Opp. at 3.)

██████████████████████████████████████████████████████████████ (Pl.'s Br. at 10-11 citing (Wagner Tr. 115:25-116:13 (Sobel Ex. 5)).) Mr. Wagner did nothing in his report other than provide his own *ipse dixit* that the trade secrets were common and well-known. (*Id.* at 11 (citing Wagner Rebuttal ¶¶222-225 (Sobel Ex. 4).) When questioned about what Mr. Wagner did to determine whether the trade secrets qualified as trade secrets, he merely testified that he read them and determined that ████████████ (*Id.* (citing Wagner Tr. 137:5-17 (Sobel Ex. 5)).) ████ ██████████████████████████████████████████████████████████████ (*Id.* (citing Wagner Tr. 138:4-11, 18-24 (Sobel Ex. 5)).) As set forth in more detail in XpertUniverse's opening brief, Wagner's report and testimony provide no indicia of a reliable methodology.

Cisco erroneously argues that Mr. Wagner's opinion that the trade secrets have no value is not equivalent to an opinion that the trade secrets do not qualify as trade secrets. (Def.'s Opp. at 5.) Cisco's argument is contrary to the California Trade Secret Act, which provides that a

3

requisite element of a trade secret is that it must have value. (Pl.'s Br. at 5 (citing Cal. Civ. Code 3426.1(d)(1)). In fact, Cisco admits that without value, a trade secret is not in fact a trade secret. (Def.'s Opp. at 5.) Mr. Wagner also states that his opinion in his report as to the value of trade secrets equates to an opinion that trade secrets 40-46 do not qualify as trade secrets. (Pl.'s Br. at 5 (citing Wagner Tr. 115:2-24 (Sobel Ex. 5)).) Hence, Cisco fails to demonstrate why Mr. Wagner's opinion that trade secrets 40-46 lack value should be presented to the jury even if his opinion that they do not qualify as trade secrets is excluded.

Finally, although not related to the *Daubert* inquiry, Cisco grossly mischaracterizes XpertUniverse's brief and states that XpertUniverse "concedes that its trade secrets are obvious..." (Def.'s Opp. at 3.) XpertUniverse never conceded that any of its trade secrets were obvious. Rather XpertUniverse argued in its brief that Mr. Wagner's "I could have written them" assertion was not a reliable basis for an opinion that the trade secrets did not qualify as trade secrets because Wagner's assertion was merely a hindsight opinion that the trade secrets were obvious in his mind, and unlike patent law (where there is a non-obvious requirement), there is no requirement in the law that a trade secret be non-obvious. (Pl.'s Br. at 11-12.)

Cisco, however, erroneously seems to suggest that non-obviousness is a requisite element of a trade secret. (Def.'s Opp. at 3-4.) Unlike the patent statute (35 U.S.C. §103), the California Trade Secret Act does not have a non-obvious requirement. Cal. Civ. Code 3426.1 Cisco cites cases decided prior to the enactment of the California Trade Secret Act and none support Cisco's argument. In *Self Directed Placement Corp. v. Control Data Corp.*, the court found that the alleged trade secrets were not secret and were a matter of common public knowledge. 908 F.2d 462, 465 (9th Cir. 1990). In *Self Directed*, the alleged trade secrets were particulars of an instructional course, and all of the alleged secrets were freely disclosed to the students who took

4

the course without an obligation of confidentiality. *Id.* The *Self Directed* court made no finding that any trade secrets were "obvious." In *Walker v. University Books, Inc.*, plaintiff alleged both copyright infringement and misappropriation of trade secrets for alleged trade secrets relating to improving the look and feel of divination cards, including using higher quality paper, brighter colors and rounded corners. 193 U.S.P.Q. 596, 603, 605 (N.D. Cal. 1977). The *Walker* court made an express finding that plaintiff's trade secret claim was "frivolous" as it was not information that could give a party an advantage over competitors and in making such finding referred to the improvements as "vague and obvious." *Id.* at 605. The Ninth Circuit affirmed the district court's opinion, but contrary to Cisco's suggestion, it did not hold that non-obviousness was a requisite element of a trade secret. *Walker v. University Books, Inc.*, 602 F.2d 859 (9th Cir. 1979).

## III. CONCLUSION

For the foregoing reasons, XpertUniverse requests that the Court issue an order precluding Cisco's damages expert Michael J. Wagner from testifying as to whether or not any of XpertUniverse's alleged trade secrets qualify as trade secrets or whether those trade secrets have value.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph Diamante
Kenneth L. Stein
Charles E. Cantine
Jason M. Sobel
B. Clayton McCraw
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
(212) 806-5400

Dated: January 4, 2013
1088679

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Plaintiff XpertUniverse, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that, on January 11, 2013, the within document was electronically filed with the Clerk of the Court using CM-ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

1084361