IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| XPERTUNIVERSE, INC., | : |
|       Plaintiff, | : |
| v. | :   Civil Action No. 09-157-RGA |
| CISCO SYSTEMS, INC., | : |
|       Defendant. | : |

**MEMORANDUM ORDER**

Before the Court is Defendant's Motion to Exclude the Expert Testimony of [Plaintiff's Expert Witness], Dr. Illah R. Nourbakhsh. (D.I. 385). It is fully briefed (D.I. 386, 399, 421), and the Court has been supplied with Dr. Nourbakhsh's opening expert report (Pl. Ex. 1), rebuttal report (Pl. Ex. 2), and declaration in support of Plaintiff's opposition to Cisco's motions for summary judgment (Pl. Ex. 3). Dr. Nourbakhsh testified, subject to cross-examination, about his opinions on March 1, 2013. (D.I. 612).

Defendant's motion is a *Daubert* motion. Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court of Appeals has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that

1

"a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003). Based on the record before the Court, the Court concludes that Dr. Nourbakhsh has specialized expertise in computer science, especially as it relates to contact centers in the 2000 to 2006 time period. This expertise is not a contested issue. The three issues remaining[1] deal with the "reliability" and "fit" of his opinions: Were the right materials examined? Can Dr. Nourbakhsh testify about what "functionalities" customers use in the absence of any direct knowledge? Are any of his opinions about secondary considerations of non-obviousness admissible? The first one is a "fit" issue. The second and third involve "reliability" issues.

---

[1] The only asserted patent claims are claims 1-5 & 12 of the '903 patent and claims 1-3 & 5 of the '709 patent. Thus, issues about whether Dr. Nourbakhsh's expert testimony about those claims can be used in regard to other claims are moot, as I am not going to allow any other claims to be asserted. The propriety of Dr. Nourbakhsh's opinions about trade secrets has been rendered moot by the grant of summary judgment on all trade secret claims.

2

Regarding the first issue, Dr. Nourbakhsh examined the materials produced by Cisco and selected a subset to work from in forming his opinions. (D.I. 612 at 49-51). Dr. Nourbakhsh stated he believes he can determine the features of Cisco's final products from the documents he examined. (D.I. 612 at 94, 99, 106; *see also* Pl. Exh. 3, ¶ 95 [explaining that he examined all relevant materials]). Cisco witnesses are going to testify that some of the materials describe features that did not make it into the actual accused Cisco products. It certainly seems to be theoretically possible for an expert to determine product features based on documentation. Whether Dr. Nourbakhsh worked from the right materials, what those materials show, and what features are in the products are more factual questions for the jury than *Daubert* issues for the Court.[2]

Regarding the second issue, Cisco proffers that the Expert Advisor, Remote Expert and Pulse products as sold to customers have optional features. XU seems to concede that the products have optional functionalities, and that if the end user does not use those features, there is no direct infringement. *See* (D.I. 399 at 16-17). Whether Cisco's customers actually installed the products, and how they actually used them, are facts central to XU's patent case that have to be proven. Most of the claims are method claims, and XU primarily asserts induced and/or contributory infringement, which requires proof that Cisco's customers directly infringe, which in turn requires proof that the customers performed each step of the accused method claims. *See Meyer Intellectual Properties, Ltd. v. Bodum, Inc.* 690 F.3d 1354, 1366 (Fed. Cir. 2012). While

---

[2] I have some difficulty understanding how we could have gotten to a situation where Dr. Nourbakhsh can say he reviewed the documents that Cisco provided, and Cisco can say that Dr. Nourbakhsh reviewed the wrong documents. Thus, I would prefer to interpret the two positions as being a dispute over the conclusions that Dr. Nourbakhsh drew from the documents he reviewed.

3

circumstantial evidence (such as user manuals and other documents) can be used to prove direct infringement, the plaintiff must still prove the user "used an infringing version of the accused products," particularly where a noninfringing version may exist. *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360-61 (Fed. Cir. 2012).

Dr. Nourbakhsh concluded the customers use the optional features without examining any customer documents or inspecting customer operations to see how the customers actually use the accused Cisco products. (D.I. 612 at 64, 66, 68-69, 70, 75, 95, 102-05). The evidence in Dr. Nourbakhsh's expert report is exceedingly thin. He states, for example, in regard to the '903 patent:

> [A]ny Cisco customer implementing the Expert Advisor functionality and software will practice the use of Expert Advisor in such a way that will reproduce the methodology recited by the method claims if the functionality of Expert Advisor is used by the customer. Furthermore Cisco provides training and written documentation (e.g. instruction guides and administrative guides), all of which explicitly guide the user in using the product as intended, and in so doing practicing each step of the method claims. Therefore, each such customer of Expert Advisor will infringe the method claims through their practice.

(Pl. Exh. 1, ¶96). There are "cut-and-paste" paragraphs stating the same thing in regard to Expert Advisor and the '709 patent (*Id.* at ¶111); Remote Expert and the '903 patent[3] (*Id.* at ¶146); Pulse

---

[3] Dr. Nourbakhsh opined that Remote Expert had "multi-lingual support" that met one of the elements of a method claim in the '903 patent. (Pl. Ex. 1, ¶ 131). Cisco proffers that this is an optional feature. At the *Daubert* hearing, Dr. Nourbakhsh stated, in regard to Remote Expert, that he had "every reason to presume that any company that generally provides access to customers in multi-lingual fashion will certainly do so when they are trying to connect experts to customers. They are not going to do a single language in that one case." (D.I. 612 at 95). Regarding Home Depot's use of Remote Expert and multi-lingual support, Dr. Nourbakhsh testified, "I didn't see the specificity in the documents that would lead me to understand which language [Home Depot] uses in general, but I'm aware of Home Depot's operations in the country and understand the language and support in general, sure." *Id.* at 68-69.

and the '903 patent[4] (*Id.* at ¶197); and Pulse and the '709 patent[5] *(Id.* at ¶208). The last Pulse conclusion varies slightly, stating that it is "highly likely to" (rather than "will") reproduce the methodology.

The *Daubert* issue is whether Dr. Nourbakhsh can testify, as an expert, in a way that is not only relevant to this issue, but also in a reliable way. Dr. Nourbakhsh has call center expertise and computer science expertise. He can testify reliably about whether technology described in Cisco documents about the Expert Advisor, Remote Expert and Pulse products instruct customers to use them in various ways, including ways that would infringe one or more of the patent claims. What is beyond his expertise and knowledge, and therefore in the realm of speculation, is whether and how any particular customer actually used the products, and therefore whether that use violates any method claim. His opinion on the matter contains three sentences. *E.g.*, (Pl. Ex. 1, ¶96) Only the middle one is proper expert testimony. The first and third sentences are simply conclusory, the sort of *ipse dixit* that is not reliable because it is not the product of Dr. Nourbakhsh's scientific or call center expertise, or his direct knowledge. Thus, his conclusion about direct infringement by Cisco customers will not be permitted.

---

[4] Pulse is no longer accused of infringing the '903 patent. (D.I. 612, at 69; D.I. 580-1, at 2).

[5] Dr. Nourbakhsh testified about Pulse and the '709 patent that his "understanding of how customers would use Pulse is based on the documentation [he] read." (D.I. 612 at 70). He testified "it makes perfect sense to say to the organization [that's deploying Pulse] it's up to their discretion to decide how to formulate the vocabulary" - *i.e.*, with or without an optional "restricted vocabulary," or "black list," that Dr. Nourbakhsh opined meets one of the elements of the '709 Patent. (D.I. 612 at 102-05; Pl. Ex. 1, ¶ 201).
There is some dispute as to which Pulse documents Dr. Nourbakhsh reviewed. As explained, whether Dr. Nourbakhsh relied on the proper documents is a factual issue for the jury.

Third, most of Dr. Nourbakhsh's opinions about secondary considerations of non-obviousness go beyond his computer science and call center expertise and are therefore not reliable. He opines about six secondary considerations: commercial success, long-felt need, failure of others, copying, praise, and industry acceptance. (Pl. Ex. 2 at 2-11).[6] The only secondary consideration for which he is clearly qualified to offer an opinion is "long-felt need." Further, his opinion on that topic (Pl. Ex. 2, ¶¶20-27, 30) is clearly based on his expertise. His opinion that Cisco's market performance is attributable to XU's technology, found in his ultimate conclusions on commercial success and industry acceptance, exceeds his technical expertise and is not permissible. *Id.*, ¶¶ 18, 19, 45, 46. While Dr. Nourbakhsh did start his own company and serve as chief scientist and chief technology officer, he delegated the marketing and sales component (D.I. 612 at 5, 9-11), and XU does not argue that Dr. Nourbakhsh has expertise in marketing or business. *See* (D.I. 399 at 19). His opinion on commercial success also suffers from being based on the idea that companies expressing "interest in the technology" constitutes commercial success. To the extent his opinions constitute the unfiltered regurgitation of what other people told him (for example, Mr. Turillo's telling him [or telling Mr. Bratic who then told Dr. Nourbakhsh] that XU solved a problem that KPMG could not, *id.* at ¶¶31-33,), the "expert" testimony adds nothing and therefore is not helpful to a jury. Dr. Nourbakhsh's copying and substantial praise opinions do not actually state that Cisco "copied" the patented technology, or that the praise was for the patented technology. Praise for XU's ideas is not the same thing as praise for the patents-in-suit. At this juncture, XU has not demonstrated that any of Dr.

---

[6] Despite having a *Daubert* hearing to consider the issues raised by Cisco, which included Dr. Nourbakhsh's opinions on secondary considerations (D.I. 386, pp.17-19), XU offered no testimony about Dr. Nourbakhsh's secondary considerations opinions.

Nourbakhsh's secondary consideration opinions (other than for long-felt need) are reliable, and, based on this record, they will be excluded.

In sum, it is **ORDERED** that Defendant's Motion (D.I. 385) is **GRANTED IN PART**. Dr. Nourbakhsh may not opine as to how Cisco's customers actually use the accused products and whether such use infringes any method claim at issue, and he may not opine as to any secondary consideration other than long-felt need.

Entered this 7th day of March, 2013.

*/s/ Richard G. Andrews*
United States District Judge