**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| XPERTUNIVERSE, INC., | ) | |
| | ) | Civil Action No. 09-157-RGA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED POST-TRIAL JURY INSTRUCTIONS WITH REDLINES INCLUDING
<u>COMPETING POSITIONS OF PARTIES</u>**

# TABLE OF CONTENTS

Page No.

1.0 INTRODUCTION ...........................................................................1

2.0 DELIBERATIONS ..........................................................................2

3.0 EVIDENCE ...................................................................................5

4.0 PREPONDERANCE OF THE EVIDENCE ..........................................7

5.0 CLEAR AND CONVINCING EVIDENCE ..........................................9

6.0 DIRECT AND CIRCUMSTANTIAL EVIDENCE ...............................10

7.0 CREDIBILITY OF WITNESSES ....................................................11

8.0 OPINION TESTIMONY .................................................................12

9.0 DISCREPANCIES IN TESTIMONY .................................................13

10.0 USE OF DEPOSITIONS AS EVIDENCE ........................................15

11.0 IMPEACHMENT—INCONSISTENT STATEMENT OR CONDUCT .........16

12.0 EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT .......17

13.0 CHARTS AND SUMMARIES IN EVIDENCE ...................................18

14.0 COUNTS III & IV ......................................................................19

  14.1 XU'S Proposed Instruction: FRAUDULENT CONCEALMENT ...........19

  14.2 Cisco's Proposed Redline of Instruction 14.1: CONCEALMENT: .........20

  14.3 DEFINITION OF IMPORTANT FACT ........................................22

  14.4 RELIANCE .........................................................................23

  14.5 REASONABLE RELIANCE ....................................................24

  14.6 CONCEALMENT – Unclean Hands ...........................................25

  14.7 COUNT III & IV—DAMAGES ................................................27

  14.8 COUNT III & IV—PUNITIVE DAMAGES ..................................29

15.0 PATENT INFRINGEMENT ..........................................................34

  15.1 THE ROLE OF CLAIMS IN A PATENT .....................................36

  15.2 HOW A CLAIM DEFINES WHAT IT COVERS ...........................37

  15.3 CLAIM INTERPRETATION ....................................................39

  15.4 OPEN-ENDED OR "COMPRISING" CLAIMS ..............................41

  15.5 WILLFUL INFRINGEMENT ....................................................42

16.0 INVALIDITY ............................................................................44

  16.1 INVALIDITY GENERALLY .....................................................44

i

16.2 INVALIDITY—PATENT CLAIMS TO BE CONSIDERED SEPARATELY ..........47

16.3 PRIOR ART ...................................................................................................48

16.4 ANTICIPATION .............................................................................................50

16.5 OBVIOUSNESS..............................................................................................52

16.6 THE SCOPE AND CONTENT OF PRIOR ART.......................................55

16.7 LEVEL OF ORDINARY SKILL ...................................................................56

17.0 DAMAGES FOR PATENT INFRINGEMENT—GENERALLY .....................................57

17.1 REASONABLE ROYALTY—ENTITLEMENT ..........................................59

REASONABLE ROYALTY—DEFINITION ...........................................................60

17.2 REASONABLE ROYALTY—DEFINITION.............................................61

17.3 DATE OF COMMENCEMENT OF DAMAGES .......................................64

18.0 TRADE SECRET MISAPPROPRIATION (CISCO'S CLAIMS AGAINST XU) .............65

18.1 INTRODUCTION ...........................................................................................65

18.2 ESSENTIAL FACTUAL ELEMENTS..........................................................66

18.3 "TRADE SECRET" DEFINED .....................................................................67

18.4 SECRECY REQUIREMENT .........................................................................68

18.5 REASONABLE EFFORTS TO PROTECT SECRECY ...............................69

18.6 "INDEPENDENT ECONOMIC VALUE" EXPLAINED .........................72

18.7 MISAPPROPRIATION BY DISCLOSURE ..................................................73

18.8 DEFINITION OF A "DISCLOSURE"...........................................................74

18.9 MISAPPROPRIATION BY USE ...................................................................75

18.10 DEFINITION OF A "USE" ..........................................................................76

18.11 REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET ...........77

18.12 DAMAGES FOR MISAPPROPRIATION—LOSS .................................78

18.13 DAMAGES FOR MISAPPROPRIATION—UNJUST ENRICHMENT DAMAGES79

18.14 CISCO'S PROPOSED INSTRUCTION: DAMAGES FOR MISAPPROPRIATION – UNJUST ENRICHMENT DAMAGES ...........................................................79

18.15 PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION ...................................................................................80

19.0 CONVERSION (CISCO'S CLAIM AGAINST XU).........................................................82

19.1 CISCO'S PROPOSED INSTRUCTION: CONVERSION – ESSENTIAL FACTUAL ELEMENTS ...................................................................................82

19.2 XU's Position ...................................................................................................82

20.0 CONVERSION – MEASURE OF DAMAGES ................................................................ 83

    20.1 CISCO'S PROPOSED INSTRUCTION: CONVERSION – MEASURE OF
             DAMAGES ....................................................................................... 83

    20.2 XU's Position ............................................................................................. 83

21.0 DUTY TO DELIBERATE ............................................................................................ 84

22.0 COMMUNICATION BETWEEN COURT AND JURY DURING DELIBERATIONS .... 85

## 1.0  <u>INTRODUCTION</u>

Now that you have heard the evidence and the arguments, it is my duty to instruct you about the applicable law.  It is your duty to follow the law as I will state it.  You must apply the law to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

Nothing I say in these instructions indicates I have any opinion about the facts.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

AUTHORITY:  Federal Jury Practice and Instructions § 103:01 (6th ed. Updated 2012) ("Federal Jury Practice and Instructions").

## 2.0 **DELIBERATIONS**

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence.  You should select one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict.  Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors.  Listen to each other carefully.  In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence.  But you should not give up your honest

convictions about the evidence just because of the opinions of your fellow jurors.  Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone, smart phone (like Blackberries or iPhones), or computer of any kind; the internet, any internet service, or any text or instant messaging service (like Twitter); or any internet chat room, blog, website, or social networking service (such as Facebook, MySpace, LinkedIn, or YouTube), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

3

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.   Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it  in, and have your foreperson date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.  Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

AUTHORITY:  Model Civil Jury Instructions for the District Courts of the Third Circuit § 3.1 (Updated 2012) ("Third Circuit Model Civil Jury Instructions").

### 3.0 **EVIDENCE**

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any facts that are stipulated—that is, formally agreed to by the parties; and

4. Any facts that are judicially noticed—that is, facts I say or said you must accept as true even without other evidence.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers.

3. Any testimony I tell or told you to disregard; and

4. Anything you saw or hear, or may see or hear, about this case outside the courtroom.

You must make your decision based only on the evidence that you saw and heard in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence, and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected. This simply means that the lawyer requested that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection was made. Objections to questions are not evidence.

5

Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection was sustained, ignore that question. If it was overruled, treat the answer like any other.  If you were instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may have been ordered struck from the record and you were instructed to disregard this evidence.  Do not consider any testimony or other evidence that was struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

AUTHORITY:  Third Circuit Model Civil Jury Instructions § 1.5 (modified).

## 4.0  PREPONDERANCE OF THE EVIDENCE

XpertUniverse has the burden, in this civil case, to prove every essential element of its claims for patent infringement and fraudulent concealment by a preponderance of the evidence. If XpertUniverse should fail to establish any essential element of a claim by a preponderance of the evidence, you should find for Cisco as to that claim.

Cisco has the burden to prove every essential element of its claims for conversion and trade secret misappropriation by a preponderance of the evidence. If Cisco should fail to establish any essential element of a claim by a preponderance of the evidence, you should find for XpertUniverse as to that claim.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  To say it differently: if you were to put the evidence favorable to XpertUniverse and the evidence favorable to Cisco on opposite sides of the scales, XpertUniverse would have to make the scales tip somewhat on its side in order to prevail on its claim.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Cisco also has the burden of establishing the essential elements of its affirmative defenses.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

AUTHORITY: Federal Jury Practice and Instructions § 104:01 (modified); Third Circuit Model Civil Jury Instructions § 1.10 (modified).

## 5.0  CLEAR AND CONVINCING EVIDENCE

Certain claims and counterclaims, which I will discuss in detail later, require proof by clear and convincing evidence.  "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction the allegations sought to be proved by the evidence are true.  Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

The only claims that require clear and convincing evidence are Punitive Damages for Concealment, Willful Infringement, and all aspects of patent invalidity, including, but not limited to, anticipation and obviousness.  All of the remaining claims are to be proved under the preponderance of the evidence standard.

AUTHORITY: *See* Federal Jury Practice and Instructions § 104:02; Third Circuit Model Civil Jury Instructions § 1.11.

## 6.0  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Generally speaking, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence.  "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  A greater degree of certainty is not required of circumstantial evidence.  You should consider both kinds of evidence, and you are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.  You are to decide how much weight to give any evidence.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

AUTHORITY:  Federal Jury Practice and Instructions §§ 101:42, 104:05 (modified); Third Circuit Model Civil Jury Instructions § 1.6 (modified).

### 7.0  CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness said or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

AUTHORITY:  Third Circuit Model Civil Jury Instructions §§ 1.7, 3.2.

### 8.0 **OPINION TESTIMONY**

You have heard testimony containing opinions from witnesses.  In weighing this opinion testimony, you may consider the witnesses' qualifications, the reasons for their opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.  The opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of a witness, you may consider any bias that the witness may have, including any bias that may arise from evidence that the witness has been or will be paid for reviewing the case and testifying or from evidence that the witness testifies regularly and makes a large portion of his or her income from testifying in court.

AUTHORITY:  Third Circuit Model Civil Jury Instructions § 2.11.

## 9.0  <u>DISCREPANCIES IN TESTIMONY</u>

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testified, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impressed you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

AUTHORITY:  Federal Jury Practice and Instructions § 105:01 (modified).

## 10.0  <u>USE OF DEPOSITIONS AS EVIDENCE</u>

During the trial, certain testimony has been presented by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case.  The testimony of a witness who, for some reason, was not present to testify from the witness stand may be presented in writing under oath or on a videotape. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

AUTHORITY:  Federal Jury Practice and Instructions § 105:02 (modified).

### 11.0  IMPEACHMENT−INCONSISTENT STATEMENT OR CONDUCT

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.  A witness may be discredited or impeached by evidence that the character of the witness for truthfulness is bad.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done if it was done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

AUTHORITY:  Federal Jury Practice and Instructions §§ 105:04, 105:06 (modified).

## 12.0  EFFECT OF PRIOR INCONSISTENT STATEMENTS OR CONDUCT

Evidence that, at some other time while not under oath, a witness who is not a party to this action has said or done something inconsistent with the witness's testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness.  However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done, if it is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

AUTHORITY:  Federal Jury Practice and Instructions § 105:09 (modified).

### 13.0 <u>CHARTS AND SUMMARIES IN EVIDENCE</u>

Each party has presented exhibits in the form of charts and summaries.  I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

AUTHORITY:  Third Circuit Model Civil Jury Instructions § 2.7.

### 14.0 COUNTS III & IV

### 14.1 XU'S Proposed Instruction: FRAUDULENT CONCEALMENT

XpertUniverse claims that it was harmed because Cisco concealed that XpertUniverse was denied admittance into the Solutions Plus partner program.   To establish this claim, XpertUniverse must prove the following six (6) elements:

1.      (a) That Cisco disclosed some facts to XpertUniverse but intentionally failed to disclose another important fact, making the disclosure deceptive;

or

(b) That Cisco intentionally failed to disclose an important fact that was known only to it and that XpertUniverse could not have discovered;

or

(c) That Cisco and XpertUniverse were partners; and Cisco intentionally failed to disclose an important fact to XpertUniverse.

or

(d) That Cisco actively concealed an important fact from XpertUniverse or prevented it from discovering that fact;

You should find that element 1 has been proved if you find that XpertUniverse has proven either 1(a), 1(b), 1(c) or 1(d).*

2.      That XpertUniverse did not know of the concealed fact;

3.      That Cisco intended to deceive XpertUniverse by concealing the fact;

4.      That XpertUniverse reasonably relied on Cisco's deception;

5.      That XpertUniverse was harmed; and

6.      That Cisco's concealment was a substantial factor in causing XpertUniverse's

harm.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 1901 (December 14, 2012).

*This final sentence has been added to the model jury instruction to clarify instruction.*

## 14.2  Cisco's Proposed Redline of Instruction 14.1: ~~FRAUDULENT~~ CONCEALMENT:

XpertUniverse claims that it was harmed because Cisco concealed that XpertUniverse  was

denied admittance into the Solutions Plus partner program **from April 2006 to January 2007.**

To establish this claim, XpertUniverse must prove the following six (6) elements:

**1.      That Cisco had a duty to disclose this information to XpertUniverse.  In order prove that XpertUniverse had a duty to disclose, XpertUniverse must prove one of the following:**

[~~1.~~](a) That Cisco disclosed some facts to XpertUniverse but intentionally

failed to disclose another important fact, making the disclosure deceptive;

or

        (b) That Cisco intentionally failed to disclose an important fact that was

known only to it and that XpertUniverse could not have discovered[~~;~~]**.**

[~~or~~]

[~~(c) That Cisco and XpertUniverse were partners; and Cisco intentionally failed to~~
~~disclose an important fact to XpertUniverse.~~]

[~~or~~]

[(d) That Cisco actively concealed an important fact from XpertUniverse or prevented it from discovering that fact;]
[You should find that element 1 has been proved if you find that XpertUniverse has proven either 1(a), 1(b), 1(c) or 1(d).*]

2.      That XpertUniverse did not know of the concealed fact;

3.      That Cisco intended to deceive XpertUniverse by concealing the fact;

4.      That XpertUniverse reasonably relied on Cisco's deception;

5.      That XpertUniverse was harmed; and

6.      That Cisco's concealment was a substantial factor in causing XpertUniverse's harm.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 1901 (December 14, 2012).

21

### 14.3   DEFINITION OF IMPORTANT FACT

**XU's Proposed Instruction:**

A fact is important if it would influence a reasonable person's judgment or conduct.  A fact is also important if the person who represents it knows that the person to whom the representation is made is likely to be influenced by it even if a reasonable person would not.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 1905 (December 14, 2012).

**Cisco's Proposed Redline:**

A fact is important if it would influence a reasonable person's judgment or conduct.  [A fact is also important if the person who represents it knows that the person to whom the representation is made is likely to be influenced by it even if a reasonable person would not.]

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 1905 (December 14, 2012).

14.4 **RELIANCE**

**XU's Proposed Instruction:**

XpertUniverse relied on Cisco's concealment if it caused XpertUniverse to either (a) forego other business opportunities, (b) continue working with Cisco, or (c) disclose confidential information to Cisco; and if it would probably not have done so without such concealment.

It is not necessary for a concealment to be the only reason for XpertUniverse's conduct. It is enough if a concealment substantially influenced XpertUniverse's choice, even if it was not the only reason for its conduct.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 1907 (December 14, 2012).

**Cisco's Proposed Redline:**

XpertUniverse relied on Cisco's concealment if it caused XpertUniverse to either (a) forego other business opportunities[,] **or** (b) continue working with Cisco[, or (c) disclose confidential information to Cisco;] and if it would probably not have done so without such concealment.

It is not necessary for a concealment to be the only reason for XpertUniverse's conduct. It is enough if a concealment substantially influenced XpertUniverse's choice, even if it was not the only reason for its conduct.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 1907 (December 14, 2012).

23

**14.5  <u>REASONABLE RELIANCE</u>**

You must determine the reasonableness of XpertUniverse's reliance by taking into account its mental capacity, knowledge, and experience.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 1908 (December 14, 2012).

### 14.6  **CONCEALMENT – Unclean Hands**

**XU's position:**

The record does not support Cisco's defense of Unclean Hands and thus there is no reason to charge the jury on the issue. If the Court will charge the jury on this defense, XU proposes the following instruction:

Cisco claims as a defense that XpertUniverse's misconduct precludes its enforcement of XpertUniverse's claim of concealment. To establish this defense, Cisco must that XpertUniverse's conduct was unconscionable and resulted in prejudice to Defendant.

XpertUniverse's misconduct must be intimately connected with XpertUniverse's claims of concealment and of such a prejudicial nature that it would be unfair to allow XpertUniverse to rely on XpertUniverse's claim of concealment.  If that is established by Cisco, then XpertUniverse is barred from claiming concealment.

AUTHORITY: California Forms on Jury Instruction, 1-3F, MB300F.29 (Unclean Hands) (Matthew Bender & Co., 2012).

**Cisco's Proposed Instruction:**

**Cisco claims as a defense that XU's misconduct bars XU from enforcing its claims of concealment. To establish this defense, Cisco must prove both of the following:**

**1. XU's misconduct was directly connected with XU's claim that Cisco committed fraud or deceit when it was XU that misrepresented that it was capable of and would deliver a Cisco-based version of XpertShare, and**

**2. XU's misconduct was so prejudicial to Cisco that it would be unfair to allow XU to recover on its claim for concealment.**

25

If Cisco proves both of these things, then XU may not recover damages for concealment.

AUTHORITY: California Forms on Jury Instruction, 1-3F, MB300F.29; 3-21A, MB2100A.60 (Matthew Bender & Co., 2012); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612 (Cal. Ct. App. 1992).

**14.7  COUNT III & IV—DAMAGES**

### 14.7.1  XU's Proposed Instruction: FRAUDULENT CONCEALMENT DAMAGES

If you decide that XpertUniverse has proved its concealment claim against Cisco, you also must decide how much money will reasonably compensate XpertUniverse for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that Cisco was a substantial factor in causing, even if the particular harm could not have been anticipated.

XpertUniverse must prove the amount of its damages.  However, XpertUniverse does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

To determine the amount of damages, you must determine the decrease in the value of XpertUniverse caused by Cisco's fraud or deceit.

AUTHORITY:  Cal. Civ. Code § 3333; Cal. Civ. Code § 1709; *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal.App.3d 412, 417-419 (Ct.App.5th Dist. 1981); *see* Judicial Council of California, Civil Jury Instructions, §§ 1923-24 (December 14, 2012).

### 14.7.2  Cisco's Proposed Redline: ~~FRAUDULENT~~ CONCEALMENT DAMAGES

If you decide that XpertUniverse has proved its concealment claim against Cisco, you also must decide how much money will reasonably compensate XpertUniverse for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that Cisco was a substantial factor in causing, even if the particular harm could not have been anticipated.

XpertUniverse must prove the amount of its damages.  However, XpertUniverse does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

[To determine the amount of damages, you must determine the decrease in the value of XpertUniverse caused by Cisco's fraud or deceit.]

AUTHORITY:  Cal. Civ. Code § 3333; Cal. Civ. Code § 1709; *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal.App.3d 412, 417-419 (Ct.App.5th Dist. 1981); *see* Judicial Council of California, Civil Jury Instructions, §§ 1923-24 (December 14, 2012).

### 14.8  COUNT III & IV—PUNITIVE DAMAGES

#### 14.8.1  XU' Proposed Instruction: FRAUDULENT CONCEALMENT – PUNITIVE DAMAGES

If you decide that Cisco committed fraud or deceit and such fraud or deceit caused XpertUniverse harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Cisco only if XpertUniverse proves that Cisco engaged in that conduct with malice, oppression, or fraud. To do this, XpertUniverse must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Cisco, who acted on behalf of Cisco; or

2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Cisco; or

3. That one or more officers, directors, or managing agents of Cisco knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Cisco acted with intent to cause injury or that Cisco's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Cisco's conduct was despicable and subjected XpertUniverse to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people. "Fraud" means that Cisco intentionally misrepresented or concealed a material fact and did so intending to harm XpertUniverse.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Cisco's conduct? In deciding how reprehensible Cisco's conduct was, you may consider, among other factors:

　　1. Whether the conduct caused physical harm;

　　2. Whether Cisco disregarded the health or safety of others;

　　3. Whether XpertUniverse was financially weak or vulnerable and Cisco knew XpertUniverse was financially weak or vulnerable and took advantage of it;

　　4. Whether Cisco's conduct involved a pattern or practice; and

　　5. Whether Cisco acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and XpertUniverse's harm that Cisco knew was likely to occur because of its conduct?

(c) In view of Cisco's financial condition, what amount is necessary to punish and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Cisco has substantial financial resources.

AUTHORITY:   Judicial Council of California, Civil Jury Instructions, § 3945 (December 14, 2012).

30

## 14.8.2  Cisco's Proposed Redline: ~~FRAUDULENT~~ CONCEALMENT—PUNITIVE DAMAGES

If you decide that Cisco committed concealment and such concealment caused XpertUniverse harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Cisco only if XpertUniverse proves that Cisco engaged in that conduct with malice[~~,~~] **or** oppression[~~, or fraud~~]. To do this, XpertUniverse must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice[~~,~~] **or** oppression[~~, or fraud~~] was committed by one or more officers, directors, or managing agents of Cisco, who acted on behalf of Cisco; or

2. That the conduct constituting malice[~~,~~] **or** oppression[~~, or fraud~~] was authorized by one or more officers, directors, or managing agents of Cisco; or

3. That one or more officers, directors, or managing agents of Cisco knew of the conduct constituting malice[~~,~~] **or** oppression[~~, or fraud~~] and adopted or approved that conduct after it occurred.

"Malice" means that Cisco acted with intent to cause injury or that Cisco's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Cisco's conduct was despicable and subjected XpertUniverse to cruel and unjust hardship in knowing disregard of its rights.

31

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people. [~~"Fraud" means that Cisco intentionally misrepresented or concealed a material fact and did so intending to harm XpertUniverse.~~]

[~~There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:~~]**XpertUniverse must also prove one of the following by clear and convincing evidence:**

[~~(a) How reprehensible was Cisco's conduct? In deciding how reprehensible Cisco's conduct was, you may consider, among other factors:~~]

[~~1. Whether the conduct caused physical harm;~~]

[~~2. Whether Cisco disregarded the health or safety of others;~~]

[~~3. Whether XpertUniverse was financially weak or vulnerable and Cisco knew XpertUniverse was financially weak or vulnerable and took advantage of it;~~]

[~~4. Whether Cisco's conduct involved a pattern or practice; and~~]

[~~5. Whether Cisco acted with trickery or deceit.~~]

[~~(b) Is there a reasonable relationship between the amount of punitive damages and XpertUniverse's harm that Cisco knew was likely to occur because of its conduct?~~]

**1.    That the employee who committed the concealment was an officer, a director, or a managing agent of Cisco who was acting on behalf of Cisco;**

**2.    That an officer, a director, or a managing agent of Cisco authorized the concealment; or**

**3.    That an officer, a director, or a managing agent of Cisco knew of the concealment and adopted or approved the conduct after it occurred.**

32

**An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.**

[(c) In view of Cisco's financial condition, what amount is necessary to punish and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Cisco has substantial financial resources.]

AUTHORITY:   Judicial Council of California, Civil Jury Instructions, § 3945 (December 14, 2012).

33

## 15.0  **PATENT INFRINGEMENT**

**XU's Proposed Instruction:**

XpertUniverse claims that Cisco infringed claim 5 of XpertUniverse's United States Patent No. 7,366,709 (the '709 patent) and claim 12 of its 7,499,903 (the '903 patent).

In order to prove direct infringement by literal infringement, XpertUniverse must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Cisco made, used, sold, offered for sale within, or imported into the United States a product, system, process or method that meets all of the requirements of a claim and did so without permission of XpertUniverse during the time the '903 and '709 patents were in force.  You must compare Cisco's accused products, systems, processes and methods with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §3.1a (Last Edited February 2012).

**Cisco's Proposed Redline:**

XpertUniverse claims that Cisco infringed claim 5 of XpertUniverse's United States Patent No. 7,366,709 (the '709 patent) and claim 12 of its 7,499,903 (the '903 patent).

In order to prove direct infringement by literal infringement, XpertUniverse must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Cisco made, used, sold, offered for sale within, or imported into the United States a product, system, process or method that meets all of the requirements of a claim and did so without permission of XpertUniverse during the time the '903 and '709 patents were in force.  You must compare

34

Cisco's accused products, systems, processes and methods with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

~~You must determine, separately for each asserted claim, whether or not there is infringement.~~

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §3.1a (Last Edited February 2012).

### 15.1  THE ROLE OF CLAIMS IN A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it was a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §B.2, 2.1 (Last Edited February 2012).

## 15.2  HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence.  If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §B.2, 2.2 (Last Edited February 2012).

### 15.3  CLAIM INTERPRETATION

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

The following definitions govern for terms in the '709 patent:

- "subject list style" means "a representation of the logical structure of a list of inquiry criteria and values and their respective relationships."

- "inquiry type(s)" means "question topics"

- "inquiry criteria" means "pre-selected subject categories"

- "underlying criteria" means "subject categories"

- "values" means "choices"

- "interactive problem definition page" means "an interactive graphical user interface"

- "inquiry criteria values" means "preselected subject categories"

- "plurality of monitors" means "two or more monitors"

- "the processor being configured to extract unique combinations from the database and evaluate the combinations" means "the processor being programmed to extract unique combinations from the database and evaluate the combinations."

The following definitions govern for terms in the '903 patent:

- "having a one-to-one correspondence" means "satisfying the property that each member of each of the one or more layers of inquiry types maps exactly to a predetermined semantically expressed inquiry type"

- "predetermined semantically-expressed inquiry type" means "terms that organize and identify categories of assistance requested, created prior to use and expressed using language that is humanly understandable"

- "underlying plurality of criteria groupings" means "two or more groups of underlying criteria"

- "layer(s) of inquiry type(s)" means "a defined set of predetermined semantically expressed inquiry types"

- "inquiry type(s)," in the context of the '903 patent only, means "term(s) that organize and identify categories of assistance requested, created prior to use and expressed using language that is humanly understandable"

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §B.2, 2.3 (Last Edited February 2012); D.I. 168 (Claim Construction Order).

### 15.4  OPEN-ENDED OR "COMPRISING" CLAIMS

**XU's Proposed Instruction:**

The beginning, or preamble, of certain claims use the word "comprising." "Comprising" means "including" or "containing but not limited to."  That is, if you decide that an accused product or the use of an accused product includes all the requirements or steps in that claim, the claim is infringed.  This is true even if the accused method includes components or steps in addition to those requirements

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 3.4 (June 17, 2009); *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997).

**Cisco's Position:**

**Cisco contends that it is improper to instruct the jury on "open-ended" or "comprising" claims as it is not necessary to understand the claims at issue and will needlessly take the Court and the jury's time.  Moreover, this instruction is misleading to the jury without an explanation of the infringement of method claims.**

### 15.5  **WILLFUL INFRINGEMENT**

In this case, XpertUniverse argues both that Cisco infringed and, further, that Cisco infringed willfully. If you have decided that Cisco has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that Cisco acted recklessly.

To prove that Cisco acted recklessly, XpertUniverse must prove two things by clear and convincing evidence: The first part of the test is objective: XpertUniverse must persuade you that Cisco acted despite a high likelihood that its actions infringed a valid and enforceable patent. In making this determination, you may not consider Cisco's state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.

Only if you conclude that Cisco's conduct was reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of Cisco. XpertUniverse must persuade you that Cisco actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether Cisco had this state of mind, consider all facts which may include, but are not limited, to:

(1) Whether or not Cisco acted in accordance with the standards of commerce for its industry;

(2) Whether or not Cisco intentionally copied a product, system, process or method of XpertUniverse that is covered by the '709 or '903 patents;

(3) Whether or not there is a reasonable basis to believe that Cisco did not infringe or had a reasonable defense to infringement;

42

(4) Whether or not Cisco made a good-faith effort to avoid infringing the '709 or '903 patents, for example, whether Cisco attempted to design around the '709 or '903 patents; and

(5) Whether or not Cisco tried to cover up its infringement.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §3.8 (Last Edited February 2012).

## 16.0 **INVALIDITY**

### 16.1 **INVALIDITY GENERALLY**

**XU's Proposed Instruction:**

Patent invalidity is a defense to patent infringement.  Even though the United States Patent and Trademark Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

The issuance of a patent by the Patent and Trademark Office provides a presumption that the patent is valid.  From the issuance of the patent, it is presumed that a claimed invention is "novel," "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent.

This presumption of validity, however, is a rule of evidence that places the burden upon Cisco, to come up with clear and convincing evidence that the Patent Office acted erroneously in issuing XpertUniverse's patent.

Each claim of a patent is presumed valid independently of the validity of the other claims. Accordingly, Cisco bears the burden of proving invalidity of each claim with facts supported by clear and convincing evidence.

The presumption of validity remains intact and the burden of proof remains on Cisco.  In other words, the clear and convincing standard does not weaken, and the burden of proof never shifts to XpertUniverse to prove that its patents are valid.

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that Cisco bears the burden of proving that it is highly probable that the claims of XpertUniverse's patents are invalid.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.1 (June 17, 2009); Federal Jury Practice and Instructions § 158.44; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007) (no shift or change in the burden of proof).

**Cisco's Proposed Redline:**

Patent invalidity is a defense to patent infringement.  Even though the United States Patent and Trademark Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

[~~The issuance of a patent by the Patent and Trademark Office provides a presumption that the patent is valid.  From the issuance of the patent, it is presumed that a claimed invention is "novel," "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent.~~]

[~~This presumption of validity, however, is a rule of evidence that places the burden upon Cisco, to come up with clear and convincing evidence that the Patent Office acted erroneously in issuing XpertUniverse's patent.~~]

[~~Each claim of a patent is presumed valid independently of the validity of the other claims.  Accordingly, Cisco bears the burden of proving invalidity of each claim with facts supported by clear and convincing evidence.~~]

[~~The presumption of validity remains intact and the burden of proof remains on Cisco.  In other words, the clear and convincing standard does not weaken, and the burden of proof never shifts to XpertUniverse to prove that its patents are valid.~~]

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that Cisco bears the burden of proving that it is highly probable that the claims of XpertUniverse's patents are invalid.

AUTHORITY:  The National Jury Instruction Project, Model Patent Jury Instructions, Instruction 5.1 (June 17, 2009); Federal Jury Practice and Instructions § 158.44; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007) (no shift or change in the burden of proof).

**16.2  INVALIDITY—PATENT CLAIMS TO BE CONSIDERED
SEPARATELY**

In making your determination as to whether a patent claim is valid or invalid, you must

consider each patent and each of the claims of a patent and separately and individually, as you

did when you considered whether the claim was infringed or not.  If the evidence is clear and

convincing that a claim in a given patent fails to meet the essential requirements of the patent

laws, then that patent claim is invalid. However, if you find that one or more claims of a patent

fail to meet the essential requirements of the patent laws, it does not necessarily mean that the

remaining claims of that patent are also deficient or invalid.

AUTHORITY:  Federal Jury Practice and Instructions §158.26.

### 16.3  PRIOR ART

**XU's Proposed Instruction:**

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or April 2, 2004 for the '709 Patent or January 24, 2005 for the '903 Patent, or more than one year before the filing date of the patent application. However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

For the claim to be invalid because it is not new, Cisco must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §4.3a (Last Edited February 2012).

**Cisco's Proposed Redline:**

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or April 2, 2004 for the '709 Patent or January

24, 2005 for the '903 Patent, or more than one year before the filing date of the patent application. [However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.]

For the claim to be invalid because it is not new, Cisco must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §4.3a (Last Edited February 2012).

16.4 **ANTICIPATION**

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical product, system, process or method has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

Cisco contends that claims 1-7 of the '709 patent and claims 1-26 of the '903 patent are invalid because the claimed inventions are anticipated or because XpertUniverse lost the right to obtain a patent. Cisco must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Here is a list of ways that Cisco can show that a patent claim was not new or that the patentee lost the right to patent the claims:

(1) An invention is not new if it was known to or used by others in the United States before April 2, 2004 for the '709 Patent, or before January 24, 2005 for the '903 Patent. An invention is known when the information about it was reasonably accessible to the public on that date.

(2) An invention is not new if it was already patented or described in a printed publication, anywhere in the world before April 2, 2004 for the '709 Patent, or before January 24, 2005 for the '903 Patent.  A description is a "printed publication" only if it was publicly accessible.

(3) XpertUniverse has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by XpertUniverse or anyone else, more than a year before April 2, 2004, which is the effective filing date of the application for the '709

50

patent, or more than a year before January 24, 2005, which is the effective filing date of the application for the '903 patent. An invention was patented by another if the other patent describes the same invention claimed by XpertUniverse to a person having ordinary skill in the technology.

(4)XpertUniverse has lost its rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before April 2, 2004 for the '709 patent, or more than one year before January 24, 2005 for the '903 patent. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

(5) An invention is not new if it was described in a published patent application filed by another in the United States before April 2, 2004 for the '709 patent, or before January 24, 2005 for the '903 patent.

(6) An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States and the application was filed before April 2, 2004 for the '709 patent, or before January 24, 2005  for the '903 patent.

(7) An invention is not new if the invention was made by someone else in the United States before the invention was made by XpertUniverse and the other person did not abandon, suppress, or conceal the invention.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §4.3b (Last Edited February 2012).

### 16.5  OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Cisco may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of expert location and collaboration technology.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of expert location and collaboration technology that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of expert location and collaboration technology to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the

52

invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the invention;

g. Whether the invention achieved unexpected results;

h. Whether others in the field praised the invention;

53

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

The presence or absence of any of these factors is not necessarily determinative.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §4.3c (Last Edited February 2012).

54

**16.6  <u>THE SCOPE AND CONTENT OF PRIOR ART</u>**

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle. When a party attacking the validity of a patent relies on prior art which was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §4.3c(ii) (Last Edited February 2012).

### 16.7  **LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of call center technology is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §4.3c(i) (Last Edited February 2012).

## 17.0  DAMAGES FOR PATENT INFRINGEMENT—GENERALLY

**XU's Proposed Instruction:**

If you find that Cisco infringed any valid claim of the '709 or '903 patents, you must then consider what amount of damages to award to XpertUniverse. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate XpertUniverse for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put XpertUniverse in approximately the same financial position that it would have been in had the infringement not occurred.

XpertUniverse has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that XpertUniverse establishes that it more likely than not suffered.

There are different types of damages that XpertUniverse may be entitled to recover. In this case, XpertUniverse seeks damages adequate to compensate for Cisco's infringement, but in no event less than a reasonable royalty. A reasonable royalty is defined as the money amount XpertUniverse and Cisco would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

I will give more detailed instructions regarding damages shortly. Note, however, that XpertUniverse is entitled to recover no less than a reasonable royalty for each infringing sale or use.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §6.1 (Last Edited February 2012).

**Cisco's Proposed Redline to 17.0 Damages for Patent Infringement Generally**

If you find that Cisco infringed any valid claim of the '709 or '903 patents, you must then consider what amount of damages to award to XpertUniverse. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate XpertUniverse for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put XpertUniverse in approximately the same financial position that it would have been in had the infringement not occurred.

XpertUniverse has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that XpertUniverse establishes that it more likely than not suffered.

[There are different types of damages that XpertUniverse may be entitled to recover. ]In this case, XpertUniverse seeks[ damages adequate to compensate for Cisco's infringement, but in no event less than] a reasonable royalty. A reasonable royalty is defined as the money amount XpertUniverse and Cisco would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

I will give more detailed instructions regarding damages shortly. Note, however, that XpertUniverse is entitled to recover no less than a reasonable royalty for each infringing sale or use.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §6.1 (Last Edited February 2012).

## 17.1  REASONABLE ROYALTY—ENTITLEMENT

**XU's Proposed Instruction:**

If you find that XpertUniverse has established infringement, XpertUniverse is entitled to

at least a reasonable royalty to compensate it for that infringement. You must award

XpertUniverse a reasonable royalty for all infringing sales.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §6.5 (Last Edited February 2012).

**Cisco's Proposal:**

Cisco proposes deletion of 17.1 Reasonable Royalty-Entitlement

59

## REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that XpertUniverse and Cisco would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of XpertUniverse and Cisco would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and XpertUniverse and Cisco were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §6.6 (Last Edited February 2012).

## 17.2 <u>REASONABLE ROYALTY—DEFINITION</u>

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

61

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been

willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §6.7 (Last Edited February 2012).

### 17.3  <u>DATE OF COMMENCEMENT OF DAMAGES</u>

In determining the amount of damages, you must determine when the damages began.

If you find that the '709 or '903 patents were granted before the infringing activity began,

damages should be calculated as of the date you determine that the infringement began. If you

find that the '709 or '903 patents were granted after the infringing activity began, damages

should be calculated as of the date the patents issued.

AUTHORITY:  The Federal Circuit Bar Association, Model Patent Jury Instructions, §6.8 (Last
Edited February 2012).

### 18.0  TRADE SECRET MISAPPROPRIATION (CISCO'S CLAIMS AGAINST XU)

#### 18.1  INTRODUCTION

##### 18.1.1  CISCO'S PROPOSED INSTRUCTION: INTRODUCTION

Cisco claims it is the owner of trade secrets pertaining to technical information regarding its proprietary ICM/IPCC, MR and ARM interfaces.  Cisco claims that this information is trade secret information and that XU misappropriated Cisco's trade secrets. "Misappropriation" means the improper use or disclosure of the trade secrets.

Cisco also claims that XU's misappropriation caused it harm resulting from XU's misuse of Cisco's trade secrets, and that Cisco suffered actual damages and XU was unjustly enriched by its improper use of certain of Cisco's trade secrets.

XU denies these claims of misappropriation.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4400 (December 14, 2012).

##### 18.1.2  XU's Position:

No objection to the general form of instruction but objects to the jury being charged with-- "Cisco claims it is the owner of trade secrets pertaining to technical information regarding its proprietary ICM/IPCC, MR and ARM interfaces."—if there is insufficient proof that Cisco's ICM/IPCC, MR and ARM interfaces qualified as trade secret identified with specificity.

### 18.2  ESSENTIAL FACTUAL ELEMENTS

#### 18.2.1  CISCO'S PROPOSED INSTRUCTION: ESSENTIAL FACTUAL ELEMENTS

Cisco claims XU has misappropriated its trade secrets.  To succeed on this claim, Cisco must prove all of the following for the trade secrets it claims was misappropriated by XU:

1.  That Cisco owned the information;

2.  That the information was trade secret information at the time of the misappropriation;

3.  That Cisco conveyed the trade secret information about its proprietary ICM/IPCC, MR and ARM interfaces to XU;

4.  That XU improperly used and/or disclosed the trade secret information;

5.  That Cisco was harmed and/or XU was unjustly enriched; and

6.  That XU's use and/or disclosure was a substantial factor in causing Cisco's harm and/or XU to be unjustly enriched.


AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4401 (December 14, 2012); Cal. Civ. Code § 3426.1(b); *Farhang v. Indian Institute of Tech.,* 2010 WL 2228963, *14 (N.D. Cal. June 1, 2010).

### 18.2.1  XU's Position:

No objection to the general form of instruction but objects to the jury being charged with-- "its proprietary ICM/IPCC, MR and ARM interfaces."—if there is insufficient proof that Cisco's ICM/IPCC, MR and ARM interfaces qualified as trade secret identified with specificity.

### 18.3   "TRADE SECRET" DEFINED

#### 18.3.1   CISCO'S PROPOSED INSTRUCTION: "TRADE SECRET" DEFINED

To prove that the information was trade secret information, Cisco must prove all of the following:

a)     That the information was secret, meaning the information must not have been of public knowledge or general knowledge in the trade or business;

b)     That the information had actual or potential independent economic value because it was secret; and

c)     That Cisco made reasonable efforts to keep the information secret.

Cisco must prove the existence of all of the above at the time of XU's misappropriation.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4402 (December 14, 2012); *DVD Copy Control Assn., Inc. v. Burner,* 116 Cal. App. 4th 241, 251 (2004) (internal citations omitted).

#### 18.3.2  XU's Position:

No objection to the general form of instruction but objects to the jury being charged if there is insufficient proof that Cisco's ICM/IPCC, MR and ARM interfaces qualified as trade secret identified with specificity.

**18.4   SECRECY REQUIREMENT**

**18.4.1   CISCO'S PROPOSED INSTRUCTION: SECRECY REQUIREMENT**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information.  It may be disclosed to employees involved in Cisco's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated to keep the information secret.  However, it must not have been generally known to the public or to people who could obtain value from knowing it.

Public disclosure is fatal to the existence of a trade secret.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4403 (December 14, 2012); *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (Cal. App. 1st Dist. 2002).

**18.4.2  XU's Position:**

No objection to the general form of instruction but objects to the jury being charged if there is insufficient proof that Cisco's ICM/IPCC, MR and ARM interfaces qualified as trade secret identified with specificity.

**18.5  REASONABLE EFFORTS TO PROTECT SECRECY**

**18.5.1  CISCO'S PROPOSED INSTRUCTION:
REASONABLE EFFORTS TO PROTECT SECRECY**

**To establish that the information is trade secret information, Cisco must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable person or business in the same situation and having the same knowledge and resources as Cisco, exercising due care to protect important information of the same kind.  This requirement applies separately to each item that Cisco claims to be a trade secret.**

**In determining whether or not Cisco made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:**

**A.  The terms of the parties' contracts pursuant to which the parties exchanged information,**

**B.  Whether documents or computer files containing the information were marked with confidentiality warnings;**

**C.  Whether Cisco instructed its employees to treat the information as confidential;**

**D.  Whether Cisco restricted access to the information to persons who had a business reason to know the information;**

**E.  Whether Cisco kept the information in a restricted or secured area;**

**F.  Whether Cisco required employees or others with access to the information to sign confidentiality or nondisclosure agreements;**

**G.** **Whether Cisco took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;**

**H.** **The extent to which any general measures taken by Cisco would prevent the unauthorized disclosure of the information; and**

**I.** **Whether there were other reasonable measures available to Cisco that it did not take.**

**The presence or absence of any one or more of these factors is not necessarily determinative.**

**AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4404 (December 14, 2012); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 U.S. Dist. LEXIS 96073, 47-48 (N.D. Cal. Dec. 20, 2007); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000).**

### 18.5.2  XU's Proposed Redline

**To establish that the information is trade secret information, Cisco must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable person or business in the same situation and having the same knowledge and resources as Cisco, exercising due care to protect important information of the same kind.  This requirement applies separately to each item that Cisco claims to be a trade secret.**

**In determining whether or not Cisco made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:**

70

A.  ~~The terms of the parties' contracts pursuant to which the parties exchanged information.~~

~~B.~~A.        Whether documents or computer files containing the information were marked with confidentiality warnings;

~~C.~~B.        Whether Cisco instructed its employees to treat the information as confidential;

~~D.~~C.        Whether Cisco restricted access to the information to persons who had a business reason to know the information;

~~E.~~D.        Whether Cisco kept the information in a restricted or secured area;

~~F.~~E.        Whether Cisco required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

~~G.~~F.        Whether Cisco took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

~~H.~~G.        The extent to which any general measures taken by Cisco would prevent the unauthorized disclosure of the information; and

~~I.~~H.        Whether there were other reasonable measures available to Cisco that it did not take.

        The presence or absence of any one or more of these factors is not necessarily determinative.


**AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4404 (December 14, 2012); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 U.S. Dist. LEXIS 96073, 47-48 (N.D. Cal. Dec. 20, 2007); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000).**

**18.6  "INDEPENDENT ECONOMIC VALUE" EXPLAINED**

**18.6.1  CISCO'S PROPOSED INSTRUCTION: "INDEPENDENT ECONOMIC VALUE" EXPLAINED**

**Information has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.**

**In determining whether information had actual or potential independent economic value because it was secret, you may consider the following:**

**A.     The extent to which Cisco obtained or could obtain economic value from the information in keeping it secret;**

**B.     The extent to which others could obtain economic value from the information if it were not secret;**

**C.     The amount of time, money, or labor that Cisco expended in developing the information;**

**D.     The amount of time, money, or labor that was or would be saved by a competitor who used the information.**

**The presence or absence of any one or more of these factors is not necessarily determinative.**

**AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4412 (December 14, 2012).**

**18.6.2  XU's Position**

No objection to Cisco's proposed form of instruction.

72

### 18.7  MISAPPROPRIATION BY DISCLOSURE

#### 18.7.1  CISCO'S PROPOSED INSTRUCTION: MISAPPROPRIATION BY DISCLOSURE

XU misappropriated Cisco's trade secrets by disclosure if:

a)      Cisco disclosed the trade secrets without Cisco's consent; and

b)      At the time of disclosure, XU knew or had reason to know that its knowledge of Cisco's trade secrets was acquired under an obligation to maintain confidentiality or agreement not to disclose information, which created a duty to keep the information secret. This obligation arose from the parties' contracts, which include other provisions regarding the identification of confidential information that you may consider when reaching your verdict.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4406 (December 14, 2012).

#### 18.7.2  XU's Proposed Redline

XU misappropriated Cisco's trade secrets by disclosure if:

a)      Cisco disclosed the trade secrets without Cisco's consent; and

b)      At the time of disclosure, XU knew or had reason to know that its knowledge of Cisco's trade secrets was acquired under an obligation to maintain confidentiality or agreement not to disclose information, which created a duty to keep the information secret. ~~This obligation arose from the parties' contracts, which include other provisions regarding the identification of confidential information that you may consider when reaching your verdict.~~

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4406 (December 14, 2012).

## 18.8  DEFINITION OF A "DISCLOSURE"

### 18.8.1  CISCO'S PROPOSED INSTRUCTION: DEFINITION OF A "DISCLOSURE"

Cisco must establish XU's "disclosure" of each trade secret with specificity.  A "disclosure" made to persons who are unable to use or derive value from the secret is not misappropriation within the meaning of the California trade secret statute.

AUTHORITY: *Agency Solutions.com, LLC v. The Trizetto Group, Inc.*, 819 F. Supp. 2d 1001, 1028-1030 (E.D. Cal. 2011); *Gibson-Homans Co. v. Wall-Tite, Inc.*, 1992 U.S. Dist. LEXIS 21909, 9-10 (C.D. Cal. Oct. 27, 1992)

### 18.8.2  XU's Proposed Redline

Cisco must establish XU's unauthorized "disclosure" of each trade secret with specificity.  A "disclosure" made to persons who are unable to use or derive value from the secret is not misappropriation within the meaning of the California trade secret statute.

Basis: Only unauthorized disclosures subject a actor to liability. Cal. Civ. Code 3426.1

### 18.9  MISAPPROPRIATION BY USE

#### 18.9.1  CISCO'S PROPOSED INSTRUCTION: MISAPPROPRIATION BY USE

XU misappropriated Cisco's trade secrets by use if XU:

a)        Used any of the trade secrets without Cisco's consent; and

b)        At the time of use, XU knew or had reason to know that its knowledge of Cisco's trade secrets were acquired under a legal obligation to limit use of the information. This obligation arose from the parties' contracts, which include other provisions regarding the identification of confidential information that you may consider when reaching your verdict.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4407 (December 14, 2012).

#### 18.9.2  XU's Proposed Redline

XU misappropriated Cisco's trade secrets by use if XU:

a)        Used any of the trade secrets without Cisco's consent; and

b)        At the time of use, XU knew or had reason to know that its knowledge of Cisco's trade secrets were acquired under a legal obligation to limit use of the information. ~~This obligation arose from the parties' contracts, which include other provisions regarding the identification of confidential information that you may consider when reaching your verdict.~~

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4407 (December 14, 2012).

### 18.10  DEFINITION OF A "USE"

#### 18.10.1  CISCO'S PROPOSED INSTRUCTION RE: DEFINITION OF A "USE"

**Cisco bears the burden of proving improper use.**

**A party engages in the "use" of a trade secret when it directly exploits the trade secret for its own advantage, _e.g._, by incorporating it into his own manufacturing technique or product.  A trade secret embodied in the product of a defendant is "used" if it is incorporated as such in the resulting product.**

**"Use" of a trade secret may not be proved simply by virtue of the fact that individuals have been exposed to trade secrets and their future endeavors will inevitably lead them to rely on the trade secret information.**

**AUTHORITY: _Sargent Fletcher, Inc. v. Able Corp._, 110 Cal. App. 4th 1658, 1669 (Cal. Ct. App. 2003); _Silvaco Data Systems v. Intel Corp._, 184 Cal App. 4th 210 (Cal. Ct. App. 2010), _modified on other grounds, rehearing denied_, 2010 Cal. App. LEXIS 771 (Cal. Ct. App. 2010);  _FLIR Sys., Inc. v. Parrish_, 174 Cal. App. 4th 1270, 1277-79 (Cal. Ct. App. 2009); _Agency Solutions.com, LLC v. The Trizetto Group, Inc._, 819 F. Supp. 2d 1001, 1028-1030 (E.D. Cal. 2011)**

### 18.10.2  XU's Position

XU has no objection to Cisco's proposed form of instruction.

### 18.11   REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET

#### 18.11.1   CISCO'S PROPOSED INSTRUCTION: REMEDIES FOR MISAPPROPRIATION OF A TRADE SECRET

If Cisco proves that XU misappropriated one or more of its trade secrets, then Cisco is entitled to recover damages if the misappropriation caused Cisco to suffer an actual loss or caused Cisco to be unjustly enriched.

If XU's misappropriation did not cause Cisco to suffer an actual loss or caused Cisco to be unjustly enriched, Cisco may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.  However, I will calculate the amount of any royalty.

Any damages awarded must be due only to trade secrets actually misappropriated.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4409 (December 14, 2012); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005).

#### 18.11.2  XU's Position

XU has no objection to Cisco's proposed form of instruction but objects to the jury being charged on damages for misappropriation because there is no evidence of damages in the record.

### 18.12   DAMAGES FOR MISAPPROPRIATION—LOSS

#### 18.12.1   CISCO'S PROPOSED INSTRUCTION: DAMAGES FOR MISAPPROPRIATION – LOSS

If Cisco proves that XU misappropriated one or more of its trade secrets, then Cisco is entitled to recover damages if the misappropriation caused Cisco to suffer an actual loss. These actual losses are based on Cisco's claims that XU's improper use or disclosure of certain of Cisco's trade secrets caused it harm.

In calculating the amount of any actual losses, do not take into account any amount that you included in determining any amount of damages for XU's unjust enrichment.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4409 (December 14, 2012); *see* Judicial Council of California, Civil Jury Instructions, § 4410 (December 14, 2012).

#### 18.12.2  XU's Position

XU has no objection to Cisco's proposed form of instruction but objects to the jury being charged on damages for losses due to misappropriation because there is no evidence of damages in the record.

**18.13   DAMAGES FOR MISAPPROPRIATION—UNJUST ENRICHMENT DAMAGES**

**18.14   CISCO'S PROPOSED INSTRUCTION: DAMAGES FOR MISAPPROPRIATION – UNJUST ENRICHMENT DAMAGES**

XU was unjustly enriched if its misappropriation of Cisco's trade secrets caused XU to receive a benefit that it otherwise would not have achieved.  Cisco is not entitled to an award for unjust enrichment if XU has not realized a profit or other calculable benefit as a result of any misappropriation of a trade secret.  There must be a reasonable basis for the computation.

To decide the amount of any unjust enrichment, first determine the value of XU's benefit that would not have been achieved except for its misappropriation.  Then subtract from that amount XU's reasonable expenses, including the value of labor, materials, rents, and interest on invested capital in developing the products accused of misappropriation.

In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Cisco's actual loss.

AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4410 (December 14, 2012); *Ajaxo Inc. v. E*Trade Financial Corp.*, 187 Cal. App. 4th 1295, 1305, 1313 (Cal. App. 6th Dist. 2010).

### 18.14.1  XU's Position

XU has no objection to Cisco's proposed form of instruction but objects to the jury being charged on damages for misappropriation because there is no evidence of damages in the record.

### 18.15  PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION

#### 18.15.1  CISCO'S PROPOSED INSTRUCTION: PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION

If you decide that XU's misappropriation caused Cisco harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Cisco and to discourage similar conduct in the future.

In order to recover punitive damages, Cisco must prove by clear and convincing evidence[1] that XU acted willfully and maliciously. You must determine whether XU acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that XU acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that XU acted with an intent to cause injury, or that XU's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

---

[1] The Model Instructions state:  No reported California state court case has addressed whether the jury or the court should decide whether any misappropriation was "willful and malicious," and if so, whether the finding must be made by clear and convincing evidence rather than a preponderance of the evidence.  In *Ajaxo Inc. v. E\*Trade Group, Inc.*, (2005) 135 Cal.App.4th 21, 66, the court affirmed a jury's finding by clear and convincing evidence that the defendant's misappropriation was willful and malicious.  If the court decides to require the "clear and convincing" standard, include the bracketed language in the first paragraph and also give CACI No. 201, More Likely True—Clear and Convincing Proof.

**"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. XU acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.**

**AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 4411 (December 14, 2012); *Ajaxo Inc. v. E\*Trade Group, Inc.*, 135 Cal. App. 4th 21, 66 (Cal. App. 6th Dist. 2005); Cal. Civ. Code § 3294(a). trade secret misappropriation**

### 18.15.2  XU's Objection To Cisco's Instruction

XU objects to Cisco's instruction as legally incorrect. XU objects to the jury being charged with punitive damages based on a claim where there is no evidence of damages and any evidence does not come close to meeting the required level of proof for punitive damages. In any event, any instruction on punitive damages for misappropriation should be consistent with XU's proposed instruction on punitive damages for its fraud claim.

**19.0  CONVERSION (CISCO'S CLAIM AGAINST XU)**

**19.1  CISCO'S PROPOSED INSTRUCTION: CONVERSION – ESSENTIAL FACTUAL ELEMENTS**

**Cisco claims that XpertUniverse wrongfully exercised control over its personal property.  To establish this claim, Cisco must prove all of the following:**

**1.      That Cisco owned, possessed, or had a right to possess certain hardware and software;**

**2.      That XpertUniverse intentionally and substantially interfered with Cisco's property by:**

**(a) taking possession of the hardware and software;**

**(b) preventing Cisco from having access to the hardware and software;**

**(c) destroying the hardware and software; or**

**(d) refusing to return the hardware or software after Cisco demanded its return.**

**3. That Cisco did not consent;**

**4. That Cisco was harmed; and**

**5. That XpertUniverse's conduct was a substantial factor in causing Cisco's harm.**

**AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 2100 (December 14, 2012).**

**19.2  XU's Position**

XU has no objection to Cisco's proposed form of instruction but objects to the jury being charged if there is no evidence of conversion.

### 20.0  CONVERSION – MEASURE OF DAMAGES

#### 20.1  CISCO'S PROPOSED INSTRUCTION: CONVERSION – MEASURE OF DAMAGES

**If you decide that Cisco has proved its claim against XpertUniverse, you also must decide how much money will reasonably compensate Cisco for the harm. This compensation is called "damages."**

**Cisco must prove the amount of its damages. However, Cisco does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.**

**The following are the specific items of damages claimed by Cisco:**

**1. The fair market value of the hardware and software at the time XpertUniverse wrongfully exercised control over it; and**

**2. Reasonable compensation for the time and money spent by Cisco in attempting to recover the hardware and software.**

**AUTHORITY:  Judicial Council of California, Civil Jury Instructions, § 2100 (December 14, 2012).**

#### 20.2  XU's Position

XU has no general objection to Cisco's proposed form of instruction but objects to "2. Reasonable compensation…" to the extent there is no evidence of such damages in the record.

### 21.0 **DUTY TO DELIBERATE**

**XU's Proposed Instruction:**

The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

AUTHORITY:  Federal Jury Practice and Instructions § 106:01 (6th ed. 2012).

**Cisco's Position:**

Cisco's position is that this instruction is redundant of Instruction 2.0.

## 22.0  COMMUNICATION BETWEEN COURT AND JURY DURING DELIBERATIONS

**XU's Proposed Instruction:**

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any means other than a signed writing. I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

From the oath about to be taken by the bailiffs you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

AUTHORITY:  Federal Jury Practice and Instructions § 106:08 (6th ed. 2012).

**Cisco's Position:**

Cisco's position is that this instruction is redundant of Instruction 2.0.

## 23.0  ADVERSE INFERENCE INSTRUCTION

**XU'S POSITION:** XU understands that the Court has denied Cisco's request to provide an adverse inference instruction regarding spoliation to the jury. For this reason, XU objects to any spoliation instructions being charged to the jury.

## CISCO'S PROPOSED ADVERSE INFERENCE INSTRUCTION

You have heard evidence that XpertUniverse destroyed electronically stored data, including data stored on computers of certain employees, after it filed this case against Cisco. Cisco contends that this data would have been relevant to the claims and defenses in this case, including Cisco's defense that XpertUniverse engaged in pre-patent filing activities that invalidate the asserted XpertUniverse patents and XpertUniverse's claim that it did not know it was denied participation in Cisco's SolutionsPlus partner program.

A party to a lawsuit has a duty to preserve relevant evidence within its control, and to prevent relevant evidence from being destroyed.  This Court has found that XpertUniverse failed to comply with these duties, because XpertUniverse failed to preserve relevant electronically stored data.  Based on this finding, you may, but are not required to, infer that the destroyed electronically stored data would have been unfavorable to XpertUniverse.

In deciding whether to draw this inference, you may consider whether the destroyed data would merely have duplicated other evidence already before you.  Any inference you decide to draw should be based on all the facts and circumstances of this case.

Source:     *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F. 3d 76 (3d Cir. 1994); *Positran Mfg. v. Diebold, Inc.*, 2003 WL 21104954, *4 (D. Del., 2003) (Sleet, J.); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 311 (D. Del. 2000) (Sleet.J.); *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 334 (D.N.J. 2004); 35 U.S.C. § 102(b).