IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


XPERTUNIVERSE, INC.,      ) Trial Volume 8
                          )
          Plaintiff,      )
                          ) C.A. No. 09-157 (RGA)
v.                        )
                          )
                          )
CISCO SYSTEMS, INC.,      )
                          )
          Defendant.      )


                    Thursday, March 21, 2013
                    12:03 p.m.
                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE RICHARD G. ANDREWS
              United States District Court Judge


APPEARANCES:


          POTTER ANDERSON & CORROON, LLP
          BY:  PHILIP A. ROVNER, ESQ.

                    -and-

          STROOCK & STROOCK & LAVAN
          BY:  CHARLES E. CANTINE, ESQ.
          BY:  JASON SOBEL, ESQ.
          BY:  CLAYTON McCRAW, ESQ.

                    Counsel for the Plaintiffs

```
1       APPEARANCES CONTINUED:

2

3               MORRIS NICHOLS ARSHT & TUNNELL, LLP
                BY:  JACK B. BLUMENFELD, ESQ.
4
                        -and-
5
                MORGAN LEWIS & BOCKIUS, LLP
6               BY:  BRETT M. SCHUMAN, ESQ.
                BY:  KELL M. DAMSGAARD, ESQ.
7
                        Counsel for the Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
1

2                    P R O C E E D I N G S

3

4               (Proceedings commenced in the

5      courtroom at 12:03 p.m.)

6

7               THE COURT:  Mr. Rovner, you're

8      here.  I'm not sure why the rest of your team

9      isn't here when I note, I remember yesterday you

10     saying, we're only ten minutes away.  It has now

11     been 20 minutes.

12              MR. ROVNER:  They had to come

13     all the way from the Doubletree.  I can't

14     explain.

15              THE COURT:  Well, then, they're

16     going to have to hang around closer by in the

17     future.  So sit down.

18              Did you get, Mr. Rovner, the note?

19              MR. ROVNER:  Yes.

20              THE COURT:  All right.  Do you

21     know what your side's position is?

22              MR. ROVNER:  Well, I believe that

23     the damages reports cannot go to the jury.

24              THE COURT:  I think that's pretty
```

1      clear.

2                      MR. ROVNER:  So I have no problem

3      giving them the testimony.

4                      THE COURT:  All right.  Mr.

5      Schuman?

6                      MR. SCHUMAN:  Your Honor, our

7      position is they should not get the whole

8      testimony, specifically with respect to

9      Mr. Bratic.

10                     Well, first of all, the testimony

11     has a bunch of sidebars and other stuff in

12     there.

13                     THE COURT:  That's an issue, but

14     that could be dealt with.

15                     MR. SCHUMAN:  And also with

16     respect to Mr. Bratic, you might recall, we had

17     a number of objections, some of which were

18     sustained, regarding his testimony about the

19     under underlying facts.

20                     For example, Mr. Bratic was saying

21     things like they put all their money into

22     completing this integration in 2006, and I

23     think -- I don't think it's appropriate for them

24      to have that testimony as a whole.  Mr. Wagner

```
 1     did not do that.  So I think there's an

 2     imbalance there.

 3               I think if there is some more

 4      specific portion, we obviously don't know what

 5     they're looking at, but if it's, for example, we

 6     wants to hear about what Mr. Bratic did to

 7     verify the Duff & Phelps number and what Wagner

 8     did to criticize that -- if it's something

 9     narrower, maybe we could consider it further.

10     But I think our position is that they should not

11     get the testimony.

12               THE COURT:  All right.  Well, let

13     me tell you what I think, which is the Third

14     Circuit case law says there are two things that

15     I'm supposed to take into account in exercising

16     my discretion, and one is whether, which does

17     not apply so much for the transcript, whether

18     the request may slow the trial when the

19      requested testimony is lengthy, so that's more

20     applicable perhaps with reading it back.  And

21      the other is, when read, only a portion of the

22     testimony, the jury may give undue weight to

23     that portion.

24               You know, here, they have asked
```

```
 1    for both damages experts, and so presumably what

 2     they've asked for is complete testimony of each

 3     of them.

 4               And so the case law further says

 5      that there's probably a cautionary instruction

 6     that ought to be given the jury if you are

 7     giving it back because, as you sort of point

 8     out, even if you say there's a one-to-one

 9     relationship between Bratic and Wagner, because

10     they're both damages experts, in fact, their

11     testimony does not necessarily correspond one to

12     one, and to the extent that both of them are

13     doing things that -- you know, there is some not

14      necessarily a hundred-percent evenness of their

15     testimony.

16               And so -- but it seems as though

17      the Third Circuit's preference is that that be

18     dealt with an instruction.

19               So what I'm inclined to do is to

20     bring the jury in, tell them we're going to

21     prepare the transcripts of the two damages --

22     Mr. Wagner and Mr. Bratic.

23               This is going to take a little bit

24     of time because we have to -- because even
```

```
1      though the transcript is in existence, it's not

2      proper that they get the whole thing.  But then

3      what I'm going to ask the two sides to do is to

4      remove the sidebars and remove the struck

5      testimony, that probably doesn't apply too much

6       to Mr. Wagner, but to remove it, black it out,

7      whatever you need to do, so that they get the

8      actual Bratic testimony and the actual Wagner

9      testimony.

10                  And I will give them the

11     cautionary instruction now, and I don't know

12      exactly how long this will take you all to do,

13     but I figured it would probably take than hour.

14     I will tell them we'll give them testimony in

15     due course.

16                  MR. SCHUMAN:  By cautionary

17     instruction, your Honor, are you referring to

18     the cautionary instruction every time the number

19     came up?

20                  THE COURT:  No, no, no, not that

21      one.  Just that when they get a portion of the

22     evidence in the case, that they should not --

23     they should focus on the entire testimony in

24      evidence, and just because they're getting some
```

```
 1      portion in writing, not to focus on that,

 2      something along those lines.

 3                  MR. SCHUMAN:  Well, I think

 4      getting them the testimony -- the Court dealt

 5      with this with a procedure where Mr. Bratic was

 6      entitled to say the number once, and then you

 7      gave the cautionary instruction, I think he

 8      actually said it twice, and you gave the

 9      cautionary instruction both types.

10                  If the jury is going to have the

11       testimony back there with the number, they are

12      going to get to see it and hear it as many times

13      as they want.  So I think the cautionary

14      instruction would apply as well.

15                  THE COURT:  Oh, that cautionary

16      instruction, yes, that should be left in.

17                  MR. SCHUMAN:  And I would --

18                  THE COURT:  But the parts where

19      there were, you know, I remember there were some

20       sidebars.  Whatever was said there, that should

21       be out.

22                  MR. SCHUMAN:  Oh, I would agree.

23                  And then we would request, I think

24      your Honor would recall when Mr. Bratic got done
```

```
1        with his testimony, we made a request for a

2        curative instruction regarding all of the

3        underlying factual testimony he was giving,

4        and --

5                    THE COURT:  I'm not going to give

6        a curative instruction now that I wouldn't give

7        before.

8                    MR. SCHUMAN:  Okay.  So the

9        curative instruction -- can we get a cite for

10       the Third Circuit case and we can take a look at

11       it?

12                   THE COURT:  Yes.  United States

13       versus Bertoli, 40 F.3d, 1384.  The relevant

14       pages are 1400 to 1401.

15                   MR. SCHUMAN:  Thank you.

16                   THE COURT:  Mr. Cantine, I think

17       Mr. Rovner ably represented your interests.

18                   MR. CANTINE:  I missed the

19       beginning and I apologize.

20                   THE COURT:  All right.  You know,

21        I had thought -- my fault.  I thought you were

22       closer by, as Mr. Rovner said he was close

23       by.

24                   So you can go back to Mr. Rovner's
```

```
 1      office when we're done or stay in the courthouse

 2      or do something, but 20 minutes is too long,

 3      really.

 4                  MR. CANTINE:  I'm sorry.  We were

 5      actually getting the transcripts and stuff that

 6      we thought --

 7                  THE COURT:  Okay.

 8                  MR. CANTINE:  We'll be more

 9      prompt.

10                  THE COURT:  Yes, yes.  I mean, you

11      know, I was trying to give you a -- both sides a

12      heads-up on the question so you could be

13      thinking about it.

14                  MR. CANTINE:  Right.

15                  THE COURT:  But I wasn't

16      necessarily planning that you, that you sit

17      there and do some quick research or whatever.  I

18      wanted you to be thinking as you were coming

19      here.

20                  MR. CANTINE:  Understood.

21                  THE COURT:  Okay.

22                  MR. CANTINE:  So is the plan -- I

23      missed it.  We're going to give them the actual

24      transcript or are we going to read it back?
```

```
 1                      THE COURT:  My inclination is,

 2          since they've asked for the transcript and we

 3          have the transcripts, to give them the

 4          transcripts.

 5                      MR. CANTINE:  Okay.  You just want

 6           us to redact that stuff, the sidebars and that

 7          kind of stuff?

 8                      THE COURT:  Yes.

 9                      MR. CANTINE:  Okay.  I guess the

10          only question would be, you know, some of the

11          information was on the demonstratives.

12                      THE COURT:  Well, they are not

13          going to get the demonstratives.

14                      MR. CANTINE:  All right.

15                      THE COURT:  They are going to get

16           the testimony.  That's what they asked for.  To

17           the extent the people didn't say it, they didn't

18           say it.

19                      MR. CANTINE:  I assume we're not

20          giving them the expert reports.

21                      THE COURT:  We're not giving them

22          the experts reports.  As I said, Mr. Rovner

23          handled it very ably.

24                      MR. CANTINE:  All right.
```

```
 1                    THE COURT:  So I guess the only

 2      question is, should we bring the jury in now and

 3       just tell them that we will be -- you know, my

 4      inclination is to just bring them in now and say

 5      that it will take a bit of time to fully

 6      respond, but there will be --

 7                    MR. CANTINE:  That's fine with us.

 8      I don't think it's going to take more than

 9      half-an-hour or so to redact the stuff, so if

10      you want to give them a heads-up of how long

11      it's going to be.

12                    THE COURT:  All right.  Well, in

13      any event, so why don't we just get the jury.

14                    MR. ROVNER:  You're optimistic.

15                    THE COURT:  I'm also going to tell

16      them right now, they are not going to get the

17      report.

18                    MR. CANTINE:  Okay.

19                    (The jury entered the courtroom

20      and took their seats in the box.)

21                    THE COURT:  Please be seated.

22                    Welcome, Members of the Jury.  I

23      do have your note, which is basically two

24      questions, and the first one is, can we see the
```

```
 1      testimony of both damage experts, Mr. Bratic and

 2      Mr. Wagner?

 3                  The second question is, can we see

 4      the expert reports about the damages?

 5                  In terms of the second question,

 6      the answer is going to be no, because they

 7      weren't admitted into evidence.

 8                  In terms of the first question, I

 9      am going to arrange for transcripts of the

10      testimony to be presented to you.  When we

11      present it to you, I'm going to have you come

12       back in, because there are some instructions I

13       want to give with it, and it's going to take a

14       little while because the Court Reporter writes

15      down everything that happens, even the stuff

16       that you didn't hear, so we're going to need to

17      work on the transcripts to make sure you are

18      getting what you are supposed to get.

19                  So I just wanted to let you know

20      that we do have the question and that we will be

21      working on it and it will take some time and

22       that we'll call you back in when we're ready to

23      give it to you.  All right?  All right.

24                  Can we take the jury back out?
```

```
 1                    (The jury was excused to the jury

 2        room.)

 3                    THE COURT:  While you're going

 4        over the two transcripts, at Page 1401 of the

 5        Bertoli opinion, there are at least two passages

 6        that are germane as to what kind of instruction

 7        I should give them when giving them the

 8        transcripts, so you might want to see if you

 9        can't, while you're working on the transcripts,

10        work on the instruction that I'm going to give

11        them.

12                    MR. CANTINE:  That was on 1400,

13        you said, your Honor?

14                    THE COURT:  1401.

15                    MR. CANTINE:  1401?  Great.

16                    THE COURT:  All right.  So we'll

17        stand in recess.  Let me all know when you have

18        reached agreement or can't reach agreement.

19        Okay?

20                    MR. SCHUMAN:  Thank you, your

21        Honor.

22                    MR. CANTINE:  Thank you.

23                    (Recess taken.)

24                         -  -  -
```

```
 1                    (Proceedings resumed in the

 2          courtroom, beginning at 2:17 p.m.)

 3

 4                    THE COURT:  Good afternoon.  Be

 5          seated.

 6                    Mr. Schuman?

 7                    MR. SCHUMAN:  Your Honor, if I

 8          might be heard briefly on the Bertoli case.

 9                    THE COURT:  Yes.

10                    MR. SCHUMAN:  So, your Honor,

11          during the break I read the case, we read the

12          case, and I think it's distinguishable in at

13          least two very fundamental ways.

14                    First, the Court held there, we

15          further hold that in this case, the trial court

16          did not abuse its discretion by providing the

17          jury with the written transcripts.

18                    The jury requested the transcripts

19          of 12 witnesses, so the danger of giving undue

20          weight to particular testimony was minimized.

21          The opinion does not say how many total

22          witnesses there were, so it's not clear whether

23          there were 12 witnesses and the jury asked for

24          the testimony of all the witnesses, but the
```

1        Court was making the point that the danger of

2        the jury giving undue weight was minimized.  And

3        here, of course, we're only giving the jury two

4        transcripts.

5                    Secondly, the Court -- the case

6        did not deal with the testimony of experts.  It

7         dealt with precipient witnesses.  And here, of

8        course, we have a different situation.  We have

9        two experts.  And one of those experts, at

10       least, Mr. Bratic, did extensively go through

11       precipient witness e-mails and purported to

12        testify about them and give his interpretation

13       of them as an expert.

14                    So one of the grounds for refusing

15       to provide the testimony to the jury, as stated

16       in the Bertoli case, is that reading only a

17       portion might cause the jury to give that

18        portion undue emphasis.  And I think what they

19       are talking about there is not a portion of a

20       particular witness' testimony, but, rather, a

21       portion of the testimony in the case.

22                    And in Bertoli they said the

23       defendant there failed to specify a single

24       example in the procedure the Court followed that

```
 1        presented a particular danger of prejudice, and

 2        while we've been working diligently, and I don't

 3        mean to be exclusive, there are some very clear

 4        examples here of the point I'm making and the

 5        danger of prejudice in giving this testimony to

 6        the jury.

 7                    One example is on page 1261.  This

 8        is when Mr. Bratic was asked about the

 9        December 17th, 2005, e-mail from Mr. Hernandez.

10        The Court may recall, this is the internal Cisco

11        e-mail where Mr. Hernandez was reporting to

12        others that he had had this conversation with

13        Ms. Eiss and that he told them we wanted to move

14        on a SolutionsPlus arrangement.

15                    In his testimony, Mr. Bratic was

16        asked, "how did it help you in forming your

17        opinion?

18                    "Answer:  Well, this is Mr.

19        Hernandez reporting it.  He talked to

20        XpertUniverse and he told them Cisco wants to

21        move forward with the SolutionsPlus program, if

22        XpertUniverse would agree to remove Genesys and

23        work with Cisco exclusively."

24                    Ms. Eiss and Mr. Hernandez both
```

1         testified live regarding that conversation, and

2         neither of them said what Mr. Bratic interprets

3         the e-mail to be saying.

4                     This is a very clear example of

5         the prejudice of allowing Mr. Bratic's testimony

6         to go back there without also providing the

7         testimony of all these other witnesses, and I

8          would certainly suggest that the solution here

9         is not to provide them with the testimony of

10        every witness.

11                    There are other examples of

12        Mr. Bratic doing the same thing.  He goes on

13        here to talk about his interpretation of Ken

14        Jordan's e-mail, where Mr. Jordan is asking a

15        question regarding Cisco's long-term plans in

16        the Knowledge Worker Space.

17                    And we had Mr. Jordan's deposition

18        testimony up on the screen, where he provides

19         testimony about that exact e-mail, and he says,

20        I was asking a question.  This is me not knowing

21        what the long-term plan is.  I may have been out

22         of my place in asking the question, but, of

23        course, Mr. Bratic puts his own spin on that.

24        And he gives testimony that the jury might

1      unduly credit over the testimony that was on the

2      video screen of Mr. Jordan.

3                  In addition, your Honor, another

4       concrete example of the prejudice of providing

5      them with this testimony, if you go to page 1319

6      of Mr. Bratic's testimony, starting at the

7      bottom of that page, there's some black-out, and

8      it goes on to 1320.

9                  The Court may recall what

10     Mr. Bratic was doing here is he was asked on

11     page 1319 about these projections for Remote

12     Expert, $1.6 billion through 2014.

13                 And what he says here on 1319,

14     and I'm just going to read from the middle of

15     the page -- the question actually starts on

16     1318.

17                 He says, "What we've seen is

18     projections where they're projecting outwards of

19      1.6 billion in sales for Remote Expert only for

20     the financial services market.  So the royalties

21     will only, if those sales occur, they will only

22     increase significantly over time.

23                 "Question:  And if you apply that

24     five percent royalty to that $1.6 billion

1        projection, what would you come to?

2                    "You end up with $80 million.

3                    "Question:  The numbers aren't

4        that far off, are they?

5                    "No."

6                    And then when the questions

7        continued down that path, the Court sustained

8        Mr. Damsgaard's objection.  This is improper.

9        It was improper.  It's not in his expert report,

10       and obviously the Court found other

11       improprieties with what he was actually

12       testifying to.

13                   So the jury may not remember that

14       $80 million number, but certainly if the jury

15       gets this transcript, they're going to be seeing

16       another number that should not have been

17       testified to.  It was improper and the Court, of

18       course, appreciated that, and when Mr. Damsgaard

19       objected, struck it.

20                   Another concrete example is that

21        in the -- he also provides a lot of testimony,

22       your Honor, and I appreciate that experts are

23        allowed to rely on hearsay, but, you know, and

24       he does this throughout.

```
 1                    But at page 1263 is an example of

 2        Mr. Bratic substantively testifying that

 3        XpertUniverse in 2006 was marching along,

 4         spending their time and resources on completing

 5         this integration project, which is the single

 6         biggest thing going on at XpertUniverse in 2006.

 7                    I appreciate that Mr. Bratic may

 8         be allowed to say those things when he's on the

 9         stand based on his interviews with, you know,

10        people at XpertUniverse or whatever.  But, of

11        course, the subject of whether XpertUniverse

12         completed this integration project was a hotly

13        disputed issue at trial, where a number of

14        witnesses, live witnesses, were asked about it,

15        testified about it, were cross-examined about

16         it.  Obviously, I made the point in my closing

17        argument, there are no documents about it.

18                    If the jury just gets Mr. Bratic's

19        testimony, even if they also get Mr. Wagner's

20        testimony, without the benefit of all of the

21         other testimony on the subject of whether this

22        integration project was completed, there is a

23        very real risk of prejudice that they may

24        believe Mr. Bratic knows something about
```

```
 1      whether this integration project was actually

 2      completed.

 3                    Those are some of the examples,

 4      your Honor.  I believe the Bertoli case talks

 5      about specific examples of prejudice, and those

 6      are three.  I would submit that that is a

 7      non-exhaustive list.

 8                    Mr. Bratic testifies about a

 9      number of the internal Cisco e-mails throughout

10      his deposition and provides his spin on them,

11      wearing his expert hat.  And I would submit that

12      the Bertoli case does not authorize this

13      procedure.

14                    Lastly, your Honor, if the Court

15       is willing to go down this path, we did confer

16      with XpertUniverse regarding an appropriate

17       cautionary instruction.  This is obviously not

18       to waive my position that this -- that the jury

19      should not get these transcripts at all.  But we

20      have an agreement on most of the instruction.

21      XpertUniverse has a problem with the last

22      sentence, and --

23                    THE COURT:  Let me see what you've

24      got.
```

```
 1                    MR. SCHUMAN:  Sure (handing
 2        document to the Court).
 3                    (Pause.)
 4                    THE COURT:  All right.  Well, I
 5        would not be inclined to give the last sentence.
 6                    MR. SCHUMAN:  Your Honor, on page
 7        1400 crossing over to 1401 of the Bertoli case,
 8        it says, for instance, in their review of the
 9        transcript, jurors may seize upon an answer
10        without focusing on limitations or
11        qualifications developed during
12        cross-examination.
13                    THE COURT:  Well, that's the
14        reason for having the general kind of
15        instruction that we have in the middle of a
16        page, to consider all the evidence and not to
17        give more weight to this evidence than any other
18        evidence.
19                    I could give an instruction that
20        said something like, when looking at the
21        transcripts, consider the transcripts as a
22        whole, or something like that, which is kind of
23        consistent with the jury instruction anyway
24        about considering the evidence as a whole.
```

```
1                        But, in other words, there are two

2          things going on here.  One is giving the

3          transcripts outside weight compared to the oral

4          testimony that is floating around in the back of

5          their mind, which is what you address up front.

6          And then there's also giving the sort of

7          internally testimony as a whole, concerning the

8          whole of the testimony.

9                        And so the -- so I'm not opposed

10         to saying something that indicates that they

11         ought to consider the whole of the testimony of

12         these -- of these two transcripts, though I

13         don't think the way that you have proposed it

14         is -- actually, it's growing on me.  But I don't

15         think it's really --

16                        MR. SCHUMAN:  Still growing on

17         you?

18                        THE COURT:  Well, not that much.

19                        MR. SCHUMAN:  I just want to make

20         clear, your Honor, that, you know, our position

21         and our objection would be to providing these

22         transcripts at all, and that without waiving

23         that right, we have --

24                        THE COURT:  I don't think you are
```

```
1       waiving any rights.

2                  MR. SCHUMAN:  Okay.

3                  THE COURT:  And I think the record

4        will be pretty clear on that.  But let me just

5        think about this for a second.

6                  (Pause.)

7                  THE COURT:  All right.  Mr.

8        Cantine, what do you have to say?

9                  MR. SCHUMAN:  Just so the record

10       is clear, your Honor, the Ken Jordan example I

11       was referring to is on the bottom of 1261, 19,

12       over onto the top of 1262, line 13.

13                 THE COURT:  Right.  I think it

14       immediately follows the other thing that you

15       cited?

16                 MR. SCHUMAN:  Yes.  Basically

17       immediately followed it.

18                 THE COURT:  All right.

19                 MR. SCHUMAN:  Thank you, your

20       Honor.

21                 THE COURT:  Thank you.

22                 Mr. Cantine?

23                 MR. CANTINE:  Thank you, your

24       Honor.
```

```
 1                        I think the Bertoli case is clear,

 2        you have discretion.  The jury asked for it, the

 3        transcripts.  I think we can give them the

 4        transcripts.  They've been properly redacted.

 5         They are getting the entire scope of what they

 6        wanted, not just our side, but their side as

 7        well.

 8                        In terms of complaining about

 9        Mr. Bratic's testimony, they had the opportunity

10        to object at that time.  They had the

11         opportunity to cross-examine him at that time.

12        They had the opportunity to put their own expert

13        on and say why those e-mails don't say what they

14        say, whatever they wanted to do.

15                        The other point, this $80 million

16        number, it's in Mr. Bratic's report.  I would be

17         happy to show it to you.  So it was not outside

18        his report, as was just suggested.

19                        THE COURT:  Well, in any event,

20        it's kind of late for that objection.

21                        MR. CANTINE:  Exactly.  So, you

22        know, I think our position is, your Honor,

23        Bertoli gives you the discretion to give the

24        transcripts.  We think the transcripts should go
```

```
 1      in.  And we've taken the time.  It's now three

 2      hours later.  We've got the redacted versions

 3      ready to go to the jury.

 4              THE COURT:  All right.  And in

 5      terms of the cautionary instruction, I do think

 6      I should say something besides we're not giving

 7      the written word undue weight relevant to the

 8      oral word.  But aside from that, which you both

 9      agreed on, I do think that I -- even though the

10      best I could come up with was further, when

11      considering the transcripts, you should consider

12      the testimony as a whole.

13              MR. CANTINE:  That's fine, your

14      Honor.  I think that's consistent with what

15      Bertoli said.

16              THE COURT:  All right.  Mr.

17      Schuman?

18              MR. SCHUMAN:  Subject to our

19      reservation of rights, I think the language that

20      the Court has come up with is fine.

21              THE COURT:  All right.  All right.

22      Well, I think that in terms of what has been

23      said about Bertoli, you know, Mr. Schuman has

24      laid out that he's talking about precipient
```

```
 1        witnesses and they're talking about expert

 2        witnesses here.  But I think we're also talking

 3        about expert witnesses for both sides.  And so I

 4        would think that would cause me to alter the

 5        balance, which, you know, it seems to me that

 6        what Bertoli says is that if the Court

 7         doesn't -- essentially, which is, if the Court

 8        can, without unduly prejudicing a party or

 9         risking the introduction of some other kind of

10        error, that it seems to be the preference to

11        provide what the jury asks for.

12                     And I guess the other thing was,

13        Mr. Schuman said was, Bertoli involved 12

14        witnesses, that one couldn't really tell how

15        much -- what was the total they were.  Here,

16        you've got two witnesses, and you know,

17         including depositions and live witnesses.  The

18        other side, maybe a range of eight to ten

19        witnesses, probably no more.

20                     But it seems that what the jury

21         wanted specifically involved, so to speak, the

22         head-to-head clash of the two damages experts.

23        So while I, you know, while I do not -- I don't

24        want to minimize what Mr. Schuman has mentioned
```

```
 1        because, for one reason or another, I do think

 2        Mr. Wagner got in a lot more argument than

 3        Mr. Bratic did about things that are marginally

 4        related to this expertise, I'm taking that into

 5        account, that I don't think -- I think that if I

 6        give the instruction, and perhaps even that I

 7        will -- that with the proper instruction, I

 8        think the jury will do its job without being

 9        unduly influenced by things that Mr. Bratic said

10        that do not really particularly apply to his

11        expertise.

12                    Hold on, Mr. Schuman.

13                    MR. SCHUMAN:  Yes, your Honor.

14                    (Pause.)

15                    THE COURT:  All right.  Yes, Mr.

16        Schuman?

17                    MR. SCHUMAN:  Just having the

18        benefit of the reading the Bertoli case since we

19        started, and appreciating we don't know what the

20        jury is really asking for, you know, one

21         suggestion -- the Court made the comment about

22        what the head-to-head is on the experts.  I

23        mean, there is a portion of Mr. Bratic's

24        testimony that is fairly -- you know, we've all
```

1        just read the transcripts here over the last

2        couple of hours, as Mr. Cantine said.  There's a

3        portion of Mr. Bratic's testimony that is

4        focused on, for better, for worse, the Duff &

5        Phelps report and the examination and

6        cross-examination of him on that.  And, of

7        course, Mr. Wagner has a corresponding

8        head-to-head portion of his testimony.

9         Likewise, there's a fairly confined portion of

10       Mr. Bratic's testimony that deals with his

11       reasonability royalty calculation and how he got

12        there and the Georgia-Pacific factors, and, of

13       course, there's a head-to-head portion of

14       Mr. Wagner's testimony.

15              And so, again, if the Court is

16       going to submit the transcripts, which I

17       understand that's what the Court is prepared to

18       do, I would request that we put it, narrow it

19       down to the head-to-head between the experts on

20       the actual damages issues that these two

21       witnesses were retained to testify about, the

22       two damage theories on the two claims.

23              MR. CANTINE:  I don't think that's

24       necessary, your Honor.  Trying to parse that and

1          thread that needle with an instruction is going

2          to be next to impossible, I think.

3                    THE COURT:  Well, I mean, there

4          is -- I do think, Mr. Cantine, that you're

5          essentially right, that if we started trying to

6           do that, there's not enough time left in today

7          to even get it done.

8                    MR. CANTINE:  Exactly.

9                    THE COURT:  Now, that doesn't mean

10          that if it were required and it was clear that

11          that is what the jury was asking for, then that

12          would be maybe one thing, but I do -- you know,

13          it's never a good idea to try to guess what the

14          jury is thinking, and, in fact, when there's a

15          request, you never know whether it's one juror

16          who wants it or all eight of them.

17                    So there are a lot of unknowns

18          here.  But it is a logical request that was

19          made, to have both sides' expert testimony on

20          damages.  And so I'm going to go ahead and give

21          them the transcripts.  And I just want to think

22          one more minute about this instruction.

23          (Pause.)

24                    THE COURT:  All right.  So I was

```
 1        thinking of amending the instructions a little

 2        bit.  I don't know who actually has a copy of

 3        this.

 4                    But the sentence that was

 5        submitted that both parties agreed on was, in

 6        the second sentence, in considering these

 7        transcripts, I would caution you to consider all

 8        the evidence in addition to these transcripts

 9        and not to give more weight to this evidence

10        than to any other evidence.

11                    I was thinking of modifying that

12        to say, in considering these transcripts, I

13         would caution you to consider all the evidence

14        in addition to these transcripts and not to give

15        more weight to the evidence -- to this evidence,

16         sorry, to this evidence simply because it is in

17        writing than to any other evidence and, in

18        particular, to other evidence than you heard,

19        but do not have in writing.

20                    MR. CANTINE:  That's fine with us,

21        your Honor.  I think that's appropriate.

22                    THE COURT:  All right.  And then I

23         would also then, further, when considering the

24         transcripts, you should consider the testimony
```

```
1        in the transcripts as a whole.

2                    All right?

3                    MR. CANTINE:  I have them here, if

4        you want them.

5                    THE COURT:  All right.

6                    MR. CANTINE:  Just one copy.

7                    THE COURT:  I'm counting on the

8         fact that you all have determined that even if

9        you hold it up to the light, you can't read what

10       has been blacked out.

11                   MR. CANTINE:  Yes.  We've had it

12       photocopied and that's my understanding.

13                   THE COURT:  Okay.  Well, why don't

14       you give that to my deputy clerk.

15                   (Mr. Cantine handed transcripts to

16       the clerk.)

17                   THE COURT:  And I guess we should

18       go get the jury.  Usually about this time is

19       when they announce they have a verdict.

20                   (The jury entered the courtroom

21       and took their seats in the box.)

22                   THE COURT:  Please be seated.

23       Good afternoon, Members of the Jury.

24                   You had earlier sent a question,
```

```
 1        can we see the testimony of both damage experts,

 2        Mr. Bratic and Mr. Wagner.  The parties have

 3        taken the transcripts, which are in excess of

 4        200 pages for these two witnesses, and have

 5        blacked out portions that you either didn't hear

 6        or you shouldn't have heard, and so we're

 7        prepared to give them to you.

 8                 So I'm providing them to you, the

 9         two transcripts of the damages experts because

10        you've requested them.

11                 In considering these transcripts,

12        I would caution you to consider all the evidence

13         in addition to the transcripts and not to give

14         more weight to this evidence simply because it

15         is in writing than to any other evidence, and,

16        in particular, to other evidence that you heard,

17        but that you do not have in writing.

18                 Now, further, when considering the

19         transcripts, you should consider the testimony

20         in the transcripts as a whole.

21                 So with that, I will send you back

22         for further deliberations and we will have the

23         transcripts sent back to the bailiff, who will

24         give them to you.  All right?  Thank you.
```

```
 1                    (The jury was excused to the jury

 2        room.)

 3                    THE COURT:  All right.  Thank you.

 4                    MR. CANTINE:  Thank you, your

 5        Honor.

 6                    THE COURT:  Mr. Cantine, if you go

 7        away, don't go too far.  Okay?

 8                    MR. CANTINE:  I won't go far.

 9                    THE COURT:  All right.  Thank you.

10                    (Court recessed at 2:47 p.m.)

11                          -  -  -

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24