```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF DELAWARE

 3

 4      XPERTUNIVERSE, INC.,     ) Trial Volume 9
                                 )
 5                 Plaintiff,    )
                                 ) C.A. No. 09-157 (RGA)
 6      v.                       )
                                 )
 7                               )
        CISCO SYSTEMS, INC.,     )
 8                               )
                   Defendant.    )
 9

10                        Friday, March 22, 2013
                          11:55 a.m.
11                        844 King Street
                          Wilmington, Delaware
12

13      BEFORE:  THE HONORABLE RICHARD G. ANDREWS
                 United States District Court Judge
14

15      APPEARANCES:

16
                 POTTER ANDERSON & CORROON, LLP
17               BY:  PHILIP A. ROVNER, ESQ.

18                        -and-

19               STROOCK & STROOCK & LAVAN
                 BY:  CHARLES E. CANTINE, ESQ.
20               BY:  JASON SOBEL, ESQ.
                 BY:  CLAYTON McCRAW, ESQ.
21
                          Counsel for the Plaintiffs
22

23

24
```

1

2      APPEARANCES CONTINUED:

3

4              MORRIS NICHOLS ARSHT & TUNNELL, LLP
                BY:  JACK B. BLUMENFELD, ESQ.
5
                        -and-
6
                MORGAN LEWIS & BOCKIUS, LLP
7               BY:  BRETT M. SCHUMAN, ESQ.
                BY:  KELL M. DAMSGAARD, ESQ.
8
                            Counsel for the Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                P R O C E E D I N G S
 2
 3              (Proceedings commenced in the
 4      courtroom, beginning at 11:55 a.m.)
 5
 6              THE COURT:  All right.  Please be
 7       seated.
 8                 I'm advised that the jury has a
 9      verdict.  And I would just ask that whatever the
10      verdict is, that the audience be restrained.
11                 So we'll go get the jury.  All
12      right?
13                 Is there something, Mr. Cantine?
14                 MR. CANTINE:  Before we do, your
15      Honor, I just wanted to, one more time in the
16      event they find liability for fraud, we think
17      punitives should go to the jury.
18                 Whether Mr. Hernandez is a
19      managing agent is an issue of fact for the jury
20      to decide.  Whether he had effect over corporate
21      policy of the type likely to come to the
22      attention of upper management is for the jury to
23      decide.
24                 THE COURT:  But there is no
```

```
1      evidence on that.

2                      MR. CANTINE:  There is, your

3      Honor.  We cited to the case.  Even if you don't

4      think --

5                      THE COURT:  No.  I agree Mr. Sobel

6      found a good case, but even taking into account

7      what happened in the defense case, there's no

8      evidence.

9                      MR. CANTINE:  All right.  Well, we

10      respectfully disagree, and we think that there

11      is substantial prejudice to our client if you're

12      reversed on appeal and we have to come back and

13      do this all over again rather than simply asking

14      the jury to spend ten more minutes and make one

15      more decision.

16                      THE COURT:  All right.  Thank you.

17                      MR. CANTINE:  Thank you.

18                      THE COURT:  All right.  Can we go

19      get the jury, please.

20                      (The jury entered the courtroom

21      and took their seats in the box.)

22                      THE COURT:  Welcome back, Members

23      of the Jury.  You may be seated.

24                      Madam foreperson, has the jury
```

1      reached a verdict?

2                  JURY FOREPERSON:  We have.

3                  THE COURT:  And I'm going to ask

4      if you hand the written verdict to my deputy

5      clerk, please.

6                  (Pause.)

7                  THE COURT:  All right.  Members of

8       the Jury, my deputy clerk is going to announce

9       the verdict, meaning, in other words, it will be

10      read aloud, and I would just instruct you to pay

11      close attention to make sure that what the

12      deputy clerk reads is, in fact, what you believe

13      or what you have agreed to as a verdict.

14                  And so would you please announce

15      the verdict.

16                  DEPUTY CLERK:  Fraudulent

17      concealment.

18                  Did XpertUniverse prove, by a

19      preponderance of the evidence, that Cisco

20      committed fraud by concealment?

21                  Yes.

22                  What damages do you find

23      XpertUniverse has proven by a preponderance of

24      the evidence it should recover for its loss that

```
1        was caused by Cisco's fraud by concealment?

2                      70 million.

3                      Infringement of XpertUniverse's

4        patents.

5                      Did XpertUniverse prove, by a

6        preponderance of the evidence, that Cisco

7        infringed claim 5 of the U.S. Patent No.

8        7,366,709?

9                      Expert Advisor:  Yes.

10                     Pulse:  No.

11                     Did XpertUniverse prove, by a

12        preponderance of the evidence, that Cisco

13        infringed claim 12 of U.S. Patent No. 7,499,903?

14                     Expert Advisor:  Yes.

15                     Remote Expert:  Yes.

16                     Validity of XpertUniverse's

17        patents.

18                     Did Cisco prove, by clear and

19        convincing evidence, that claim 5 of U.S. Patent

20        No. 7,366,709 is invalid due to anticipation?

21                     No.

22                     Did Cisco prove, by clear and

23        convincing evidence, that claim 5 of U.S. Patent

24        No. 7,366,709 is invalid due to obviousness?
```

1                    No.

2                    Did Cisco prove, by clear and

3      convincing evidence, that claim 12 of U.S.

4      Patent No. 7,499,903 is invalid due to

5      anticipation?

6                    No.

7                    Did Cisco prove, by clear and

8      convincing evidence, that claim 12 of U.S.

9      Patent No. 7,499,903 is invalid due to

10     obviousness.

11                   No.

12                   Damages for Cisco's patent

13     infringement.

14                   What damages do you find

15      XpertUniverse has proven by a preponderance of

16     the evidence it should recover for Cisco's

17     infringement of XpertUniverse's patents?

18                   Expert Advisor, $15,463.

19                   Pulse, zero.

20                   Remote Expert, $18,920.

21                   THE COURT:  Are there any

22     requests?

23                   MR. CANTINE:  Not from the

24     plaintiff, your Honor.

```
 1                    MR. SCHUMAN:  No, your Honor.

 2                    THE COURT:  All right.  Then I

 3          would ask that my deputy clerk file and record

 4          the verdict.

 5                    Members of the Jury, your job is

 6          done.  In a minute I'm going to ask the deputy

 7          clerk to take you out.

 8                    I think the parties said during

 9          their closing arguments that they very much

10          appreciated your service.  I, too, appreciate

11          your service.  It's what makes this system

12          work.

13                    And as I mentioned one or twice

14          during the trial, you have been a very attentive

15          jury.  After hours of sometimes difficult

16          testimony, I would still see you following the

17          witnesses, follow what was up on the screen, so

18          you really have done a great service for your

19          community.

20                    The other thing I would ask is,

21          when you go back to the jury room, if you would

22          just wait one minute because I want to come back

23          and speak to you for a second.  All right?

24                    Can we take the jury out, please.
```

```
1                    (The jury was excused.)

2                    THE COURT:  All right.  So what

3         I'd like to do is, I would like to take a brief

4         recess and for you to hang around, and when I

5         get back, we'll talk about, you know, what's

6         going to happen next?  All right.

7                    MR. CANTINE:  Thank you, your

8         Honor.

9                    (Short recess taken.)

10                    -   -   -

11                    (Proceedings resumed after the

12        short recess.)

13                    THE COURT:  All right.  So what is

14        it that we could usefully address at this point?

15                    MR. SCHUMAN:  Your Honor, I think

16        there are at least a few issues remaining.

17                    First, I think the applicability

18        of the limitation of liability clauses in the

19        two technology developer agreements is still --

20        needs to be briefed and decided.

21                    The technology developer

22         agreements were the foundation for a potential

23        SolutionsPlus agreement.  Obviously, at summary

24        judgment, the Court rejected --
```

```
 1                    THE COURT:  I know what you are

 2      talking about.  I know what the issue is.

 3                    MR. SCHUMAN:  I think we need a

 4      briefing schedule on that.  There's a contention

 5      from the plaintiffs that the limitation of

 6      liability clause does not apply to the claim

 7      that the jury has found in their favor on, so I

 8      would ask for a couple of weeks to file an

 9      opening brief on that and have a briefing

10      schedule.

11                    THE COURT:  All right.  Before we

12      start getting nuts and bolts, let's get the full

13      agenda.

14                    MR. SCHUMAN:  I think we have

15      inequitable conduct claims regarding the

16      patents.

17                    There are a couple of different

18      bases for inequitable conduct pleaded in the

19      counterclaims that need to be decided on the

20      patent side.

21                    THE COURT:  You know, I remember

22      at this point that there were inequitable

23      conduct claims.  I remember I struck some of

24      them, but I didn't strike others of them.
```

```
1                    I'm not looking for my argument.

2          What was -- what is a general, briefly, in much

3          of a nut as you can, what is the general

4          inequitable conduct theory?

5                    MR. SCHUMAN:  I don't recall any

6          of them being stricken, your Honor, but there

7          were about six or seven different bases.  And it

8          is the -- the lack of any disclosure to the PTO

9          in the prosecution of either of the two asserted

10         patents regarding any of the -- any prior art

11         actually at all.

12                   There were no disclosures named at

13         all, and as well as in some of the -- some of

14         those patents were brought to XpertUniverse's

15         attention by IP Capital, and the -- the

16         information that was brought to XpertUniverse's

17         attention by IP Capital regarding the prior

18         activities, the offers to sell, et cetera, with

19         respect to KnowledgeSHARE and XpertSHARE.  And,

20         you know, I have not completely thought through

21         at this point, your Honor, what the impact of

22         the jury's verdict is on that claim.

23                   THE COURT:  Okay.  And on

24         inequitable conduct, is it your theory that
```

```
 1    we're going to need to have a hearing?

 2                   MR. SCHUMAN:  We may, your Honor.

 3                   THE COURT:  Okay.  All right.

 4    What else?

 5                   MR. SCHUMAN:  The only other

 6    request, your Honor, is I think, we, of course,

 7    timely filed the Rule 50 motion.

 8                   The brief was put together where

 9    there was a lot of other activity going on.  If

10     the Court would permit us leave to go back and

11    look at that brief and possibly file another

12    brief, that would be appreciated.

13                   THE COURT:  You know, it has been

14    sitting in my in-box and I saw that there was a

15    brief given.  I didn't read it.

16                   Was that a brief in connection

17    with, again, the plaintiff's case or in

18    connection with at the end of the defendant's

19    case, or which -- which JMOL was that in

20    relation to?

21                   MR. SCHUMAN:  The former.  At the

22    end of the plaintiff's case.

23                   THE COURT:  Okay.  All right.  So

24    we just have a general JMOL situation.  Is that
```

```
1      it for your agenda items?

2                    MR. SCHUMAN:  I think so, your

3      Honor.

4                    THE COURT:  All right.

5                    MR. SCHUMAN:  Well --

6                    MR. BLUMENFELD:  Your Honor, I

7      think procedurally, the motion that we make now

8      is a Rule 50(b) motion as opposed to a Rule

9      50(a) motion, and there undoubtedly will also be

10     a motion for a new trial under Rule 59.

11                   THE COURT:  Okay.  I was kind

12      of -- in the agenda, I was kind of putting all

13      the post-trial motions together.

14                   MR. BLUMENFELD:  Right.

15                   THE COURT:  Mr. Cantine?

16                   MR. CANTINE:  Obviously, your

17      Honor, we do not believe the limitation of

18      liability clause applies.

19                   THE COURT:  Right.  Right.  I

20     assumed you were going to oppose that and oppose

21      inequitable conduct.

22                   MR. CANTINE:  Yes.

23                   THE COURT:  And oppose the JMOL

24      and the new trial.
```

```
 1                    MR. CANTINE:  Correct.  And we

 2        want the opportunity to file our own Rule 50

 3        motion.

 4                    THE COURT:  Okay.

 5                    MR. CANTINE:  So I think those

 6        would be the -- I'm sorry.

 7                    MR. ROVNER:  Our 50(a) motion was

 8        made, but we never briefed it.

 9                     MR. CANTINE:  Right.

10                    THE COURT:  Okay.  You know, I

11        mean, in the middle of trial, I don't expect

12        people to be briefing motions.  I just don't.

13        If they do, that's nice.

14                    So all right.  So how -- how

15        procedurally do you want to do this?  Do you

16        want to basically say that we'll have some --

17         well, I guess some of these post-trial motions

18         that may get made may be made in writing and

19         they're going to have a time limit of their own

20        by which they'll be made.  Let's put that aside.

21                    What do the parties think

22        generally in terms, because I imagine any

23        motions that Mr. Cantine makes, he's going to

24        brief and go first, and any motions Cisco makes,
```

```
 1        they're going to brief and go first.  And

 2        thinking for all -- all of your motions put

 3        together, Mr. Schuman, how many pages do you

 4        think you need?

 5                  MR. SCHUMAN:  Your Honor, I think

 6         20 pages is sufficient on the applicability of

 7         the limitation of liability clause.  I don't

 8         think we need to exceed page limits on that.

 9                  The inequitable conduct claims, I

10         would request, because I want to go back and

11         review, I think there were six or seven of them

12         and each claim was on a different piece of art.

13         I want to go back and look at those.  I think we

14         might need 20 pages or more there.  I do want to

15         rebrief the previously filed judgment as a

16         matter of law motion.

17                  THE COURT:  All right.  Well, what

18          about these new motions for new trial and more

19         JMOLs?  Are you planning on briefing multiple

20         versions of the JMOL, or just basically one

21         combined thing, or what?

22                  MR. SCHUMAN:  I think you gave us

23         40 pages on the summary judgment that was read.

24                  THE COURT:  I did.
```

```
 1              MR. SCHUMAN:  I think we could
 2      probably put them together in that 40, 40, 20.
 3              THE COURT:  All right.  So just
 4      tell me again.  So how many pages are you asking
 5      for altogether?
 6              MR. SCHUMAN:  Well, I want to keep
 7       the limitation of liability issue separate, if
 8      that's okay, which I think we can do in a
 9      20-page brief.  In other words, under the normal
10      briefing rules and then these other motions, 40,
11      40, 20.
12              THE COURT:  And do you want to do
13      the inequitable conduct?
14              MR. SCHUMAN:  I think inequitable
15      conduct is separate and I think a 20-page brief
16       there.  As I said, I would like to go back and
17      look at the claims.
18              THE COURT:  Okay.  So I've got
19      your request at 20, 20, 10 on the limitation of
20      liability.  Inequitable conduct, 20, 20, 10,
21       though you have to refresh yourself on exactly
22      what those claims are.  The JMOLs for your side
23      I got the request of 40, 40, 20, and I'm
24      including the JMOL motion for new trial.
```

```
 1                    Mr. Cantine, on your side, what is

 2         your request?

 3                    MR. CANTINE:  I think for our

 4          50(a) motion, your Honor, we ought to have, it

 5          seems like the 40, 40, 20 would apply.  50(b).

 6         I'm sorry.

 7                    Okay.  I'm correct, the 50(a) I

 8         guess comes first.  Then we do a 50(b) as well.

 9         Is that right?

10                    MR. ROVNER:  Your Honor, the

11         procedural posture is that the plaintiffs timely

12         moved for, under 50(a), at the close of our

13          case, they submitted a brief in support, their

14         formal motion.  We made a 50(a) motion at the

15         end of the defense case.  We have not briefed

16         that yet.

17                    I think in some respects the 50(a)

18         motions are moot now that the jury has come

19         back.  I would recommend we just proceed with

20         50(b) motions.

21                    THE COURT:  Well, I'll going to

22         let you all figure that out whether they are

23         moot or not.  Basically, I just want to, you

24          know, prevent getting an onslaught of briefing
```

```
1        that I can't do anything with other than -- that

2        I can't do anything with.

3                    So -- but basically, Mr. Cantine,

4        all of your briefing, all the issue you

5        anticipate raising could be, in your opinion,

6        dealt with 1, 40, 40, 20 briefing.

7                    MR. CANTINE:  Correct, your Honor.

8                    THE COURT:  All right.  So leaving

9         aside the page limits, when would you all like

10       to have the opening briefs due?

11                   MR. CANTINE:  30 days.

12                   THE COURT:  I mean, there's no

13       urgency.

14                   MR. CANTINE:  Okay.

15                   THE COURT:  So I mean don't --

16       pick the time frame you would like to have.

17                   MR. CANTINE:  I'd like 45 days.

18                   THE COURT:  Okay.

19                   MR. CANTINE:  I need 15 days to

20       rest.

21                   THE COURT:  Yes.  I'm not

22       necessarily opposed to that.

23                   Mr. Schuman?

24                   MR. SCHUMAN:  That's fine with us,
```

```
1        your Honor.

2                  THE COURT:  Okay.  Well, so, then,

3        opening briefs will be due 45 days from today.

4        If that turns out to be a weekend, then the

5        Monday or whatever the first business day is

6        after that.

7                  How long would you all like to

8        respond to each other's briefs?

9                  MR. CANTINE:  30 days.

10                 MR. SCHUMAN:  That's fine your

11       Honor.

12                 THE COURT:  All right.  Hold on.

13       Okay.

14                 And reply briefs?

15                 MR. CANTINE:  20 days?

16                 THE COURT:  How about -- you know,

17       how about 15 days?

18                 MR. CANTINE:  That's fine.

19                 THE COURT:  All right.  Okay.  So

20       we've got a schedule there.

21                 And do you think, Mr. Schuman,

22       that whatever briefing you submit on inequitable

23       conduct, even if I gave it the most possibly

24       charitable interpretation to you, do you think
```

```
 1      that it's likely that I would be able to rule in

 2      your favor without having a hearing?

 3                  MR. SCHUMAN:  I don't know.

 4                  THE COURT:  Okay.  I guess

 5      actually, do you expect, Mr. Cantine, and I

 6      realize you may not may not have put on

 7      inequitable conduct for awhile either, do you

 8      think if there's briefing on that, I'm going to

 9      be able to rule in your favor based just on the

10      briefing or do I need a hearing?

11                  MR. CANTINE:  Not having thought

12      it through all the way, I think you could

13      probably rule on paper on that.  Certainly, I

14      can think of one of their grounds was whether

15      this guy David Rutberg should have been named as

16      an inventor.  We put in evidence, his own

17      testimony he wasn't an inventor.  I don't think

18      we need a hearing on that.

19                  THE COURT:  I think that was

20      pretty conclusory.

21                  MR. CANTINE:  We're a little bit

22      pressed for time.

23                  THE COURT:  But my point is,

24      because one of the things was, actually, that
```

```
 1      was one of the slightly discordant notes.  I

 2      remember the first time you asked was Rutberg an

 3      inventor and somebody no, why is he asking that?

 4      And then you did have the video and there I

 5      understood it to be, oh, well, his opinions

 6      don't count.  He's really not an inventor.

 7                  I understood why you were asking

 8      him or it was played during the video, but I

 9      think in terms of giving me any meaningful input

10      as to whether or not he is or isn't an inventor,

11      that's pretty much a zero.

12                  MR. CANTINE:  But, again, I think

13      we could marshal that evidence in a brief rather

14      than having a hearing.  I have not thought

15      through all the other ones.

16                  THE COURT:  Well, why don't we do

17      this, because I will let you brief the

18      inequitable conduct.  I'm thought it may easily

19      be the case that when I see the briefs, that I'm

20      going to say it's not worth struggling through

21      these briefs.  Let's just have a hearing, and

22      whatever you all think is germane we can put it

23      on, because I do tend to think I could rule in

24      your favor on the briefing, depending on how
```

```
1        it's presented.  It would be shocking to me if I

2        could rule in Cisco's favor just on the

3        briefing.

4                    But -- so okay.  So I'm probably

5        going to live to regret this, but why don't you

6        submit your 40, the schedules that you proposed.

7        Yes, Mr. Rovner?

8                    MR. ROVNER:  I didn't want to

9        interrupt.  I can wait.

10                   THE COURT:  No.  No.  Interrupt

11       me.

12                   MR. ROVNER:  Okay.  One thing that

13       we did not address is a motion for fees.  And I

14       know under the statute, under the Federal Rules,

15       that we have either 14 or 21 days after you

16       enter the verdict, and so I want to make sure

17        that the briefing schedule that you've allowed

18       for 45 days preserves our right, because I don't

19       want to waive that, when it says 14 or 21 days.

20                   Under the Federal Rules I think we

21        have 14 or 21 days after entry of a verdict to

22       file a motion for fees.

23                   THE COURT:  Right.  I heard you.

24       I was going to say, you know, I don't know how
```

1    many days you have.

2                MR. ROVNER:  I know it's less than

3         45.  I want to make sure we preserve that.

4                THE COURT:  If you need to do some

5          motion to preserve some right, go ahead and do

6          the motion.  But it strikes me -- when you say

7          "Fees," what kind of thing?  The clerk awards?

8                MR. ROVNER:  Costs we can defer

9         until after the appellate process, assuming

10        there is one, but fees, that does not get

11        stayed.

12                What I would suggest is to file

13        a -- file a motion within the time provided, but

14         then we brief it under the schedule that you've

15         suggested.

16                THE COURT:  All right.  That's

17        okay.  All right.  In any event, what we're

18         discussing, that's without prejudice to either

19         side if you think of things you need to do to

20         protect the record or do things in a timely

21         manner.  All I'm trying to do is to get a

22          briefing schedule and to have some idea of how

23        much paper you all are going to throw my way.

24                So we've got a schedule.  We've

 1       got a rough amount of paper.  And I guess I will

 2       look forward to seeing all of this paper.  Okay?

 3                       Is there anything else you want to

 4       discuss today?  Mr. Cantine?

 5                       MR. CANTINE:  No thanks.  No.

 6       Thank you, your Honor.

 7                       THE COURT:  Mr. Schuman?

 8                       MR. SCHUMAN:  No.  Thank you, your

 9       Honor.

10                       THE COURT:  All right.  We will

11       stand in recess.

12                       (Court recessed at 12:30 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24